561 A.2d 699

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian THOMAS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 11, 1989.

Decided June 27, 1989.

Reargument Denied Aug. 21, 1989.

258

Jeremy C. Gelb, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Phila. Co. Chief, Philadelphia, Appeals Div., Hugh J. Burns, Jr., Asst. Dist. Atty., Catherine Marshall, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We are presently required to review the conviction of Brian Thomas (Appellant) of murder of the first degree and the sentence of death pursuant to 42 Pa.C.S. § 9711(h)(1).[1] Appellant was arrested and charged with criminal homicide, burglary, involuntary deviate sexual intercourse and rape, arising out of the death of Linda Johnson whose naked,

1. 42 Pa.C.S. § 9711(h)(1) reads:

 A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

battered corpse was found dangling over the edge of her bed on August 9, 1985, at her apartment in the City of Philadelphia.

Appellant was tried in the Court of Common Pleas of Philadelphia County, before a jury with the Honorable Edwin S. Malmed presiding. On February 6, 1986, the jury returned its verdicts of guilty of murder of the first degree, burglary, involuntary deviate sexual intercourse and rape. A separate sentencing hearing followed these verdicts, after which the same jury determined that Appellant be sentenced to death. Post-verdict motions were argued and denied and the trial court sentenced Appellant to death on the murder of the first degree conviction followed by concurrent terms of imprisonment of ten to twenty years on the burglary conviction, ten to twenty years on the rape conviction, and five to ten years on the involuntary deviate sexual intercourse conviction. This automatic appeal followed.

As it is our practice in death penalty cases to review the sufficiency of the evidence, we begin our review of this matter with a discussion of whether the record evidence was sufficient to support the jury's verdict of murder of the first degree. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985).

Using this standard, the evidence adduced at trial, together with all reasonable inferences in favor of the

Commonwealth, discloses the following. At approximately 7:00 p.m., on August 9, 1985, St. Clair Holman returned to his room in the victim's apartment at 5945 Lansdowne Avenue in the City of Philadelphia. Mr. Holman rented this room from the victim and shared these premises with her and her boyfriend, Irving Furlow. Upon arriving, he noticed that the premises had been ransacked and began a search of each room. In his own bedroom he found that his bed had been moved some two feet from its usual resting place and that his television and a can of change totalling about $29.00 were missing.

When Mr. Holman entered the victim's bedroom he found that this room had also been ransacked and came upon the victim's body hanging facedown on a broken box spring. Her lower torso was left dangling down to the floor and was supported by her lifeless knees. The mattresses had been removed from the bed and were placed upright against a wall and paper and clothing were strewn about the room. Mr. Holman testified that the victim's eyes and face were swollen and her nose and right temple were bleeding. There was a bite mark on her cheek and there were bruises on her arms and thighs.

The victim was found with her upper body clothing pulled up over her shoulders and the body was nude from the waist down. There was blood oozing from the victim's vagina and rectum. Upon discovering the victim in this grizzly state, Mr. Holman called the police. Officer McGrath arrived at the scene by 7:25 p.m. and when he determined that the victim had no pulse, he summoned a rescue squad. Since Mr. Holman indicated to Officer McGrath that the apartment was ransacked and his television and $29.00 had been taken, Officer McGrath also made a report of a burglary over the police radio.

Officer McGrath had seen the victim alive only two hours before at the apartment when he was investigating the victim's complaint of a stolen purse. During that interview, the officer testified that Appellant was with the victim.

Mr. Holman was able to corroborate that Appellant was with the victim at 5:45 p.m.

Appellant's friend, Barney Porter, was able to confirm that he saw Appellant with the victim outside of a bar located across the street from the victim's apartment during the late afternoon hours on the day of the murder. Porter also testified that he saw Appellant at around 8:00 p.m. on the same evening on his porch counting out what turned out to be $29.00 in change.

The missing television was found in Appellant's home shortly after the murder. There was also evidence of sperm found in the victim that was consistent with it having been deposited between 5:00 p.m. and 6:30 p.m. on the day of the murder and evidence that the sperm was deposited by a non-secretor, one who does not secrete traces of his blood in his body fluid emissions. Appellant's blood was analyzed and was typed to be non-secreting. Blood found on his boxer shorts proved to be human blood. An impression of Appellant's teeth was cast, which fit exactly with the bite mark left on the victim's cheek.

Finally, the autopsy conducted on the victim's body revealed, in addition to the injuries already mentioned, three fractured ribs, a massive twenty-three inch tear to the victim's body, reaching from the vagina and diaphragm up into the chest cavity, and that a shirt had been shoved into the victim's rectum, through the intestinal wall and into her abdominal cavity. Both of these injuries were caused by the insertion of a blunt instrument into the victim. A blood encrusted crutch was found near the body which no doubt was used to inflict these injuries on victim. Tragically, the medical evidence also indicated that the victim was alive while all these injuries were committed.

Taking all of these circumstances together, a jury could conclude beyond a reasonable doubt that Linda Johnson's death was a homicide. The Crimes Code defines murder of the first degree as "[a] criminal homicide ... committed by an intentional," i.e., "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d).

From the nature of the injuries, the jury could infer that the homicide was intentional and malicious. Since the evidence shows that there was a conscious purpose to bring about Linda Johnson's death, the requirements for premeditation were met. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Finally, the jury could determine that Appellant committed the crime since the evidence placed him at the scene of the crime at the time of death, blood was found on his boxer shorts, his bite mark was found on the victim's cheek, and sperm of a non-secretor, like Appellant, was found in the victim. Accordingly, we are satisfied that sufficient evidence exists in this record to support the jury's verdict of murder of the first degree.

Appellant raises various claims concerning the sufficiency of the evidence regarding his convictions of burglary, involuntary deviate sexual intercourse and rape. Related to this challenge is Appellant's argument that evidence of these convictions should not have been submitted to the jury during the penalty phase to support the Commonwealth's argument that Appellant committed the killing during the perpetration of a felony.

In response to these arguments, the Commonwealth points out that these challenges were not raised in post-verdict motions and that they must be considered waived. It is true that the failure to raise an issue at trial and in post-trial motions precludes appellate review of the issue, (see, *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974)), but, in death penalty cases, we relax the waiver rule at times and address the merits of arguments raised for the first time in the direct appeal to this court. *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989). In anticipation of our policy in reaching waived issues in death penalty cases, the Commonwealth argues that the evidence presented at trial is sufficient to support Appellant's convictions for burglary, involuntary deviate sexual intercourse and rape. The Commonwealth also argues that evidence of these crimes was properly presented to the jury during the penalty phase to support the aggravating circumstance that

the killing was committed during the commission of a felony.

 To sustain a conviction, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt. Although the Commonwealth does not have to establish guilt to a mathematical certainty and may, in the proper case, rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture. *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982); *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973). Furthermore, where no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Crowson*, 488 Pa. 537, 412 A.2d 1363 (1980).

 In order to prevail on the burglary charge, the Commonwealth was required to prove beyond a reasonable doubt that Appellant entered the victim's home, with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter. 18 Pa.C.S. § 3502(a).

Appellant argues that there was no evidence presented to show that he entered without license or privilege and that, to the contrary, the evidence points to an authorized entry. Appellant points to the testimony of Mr. St. Clair Holman, who testified that he saw Appellant and the victim in the bathroom of the victim's apartment shortly before the murder. Mr. Holman testified that as he lay on his bed he could look out of his bedroom window and see down to the street where Officer McGrath was standing and speaking up to Appellant and the victim, who were hanging out of the bathroom window. From Mr. Holman's vantage, he was also able to identify the officer and the two in the bathroom, because the bathroom window was a bay window which jutted out past his bedroom window.

Officer McGrath confirmed that shortly before the murder, he spoke with the victim and Appellant from her bathroom window. Appellant now argues that because these witnesses testified that they saw him in the apartment with the victim it must be assumed that Appellant was licensed to enter.

It is true that a person who is licensed or privileged to enter a building cannot be convicted of burglary even if he intends to commit a crime once in the building. See, *Commonwealth v. Corbin*, 300 Pa.Superior Ct. 218, 446 A.2d 308 (1982). The element of license and privilege, however, like that of consent, can be vitiated if they are induced by deception or from one who is intoxicated and unable to make a reasonable judgment as to the nature or harmfulness of the situation at hand. See, *Commonwealth v. Hayes*, 314 Pa.Superior Ct. 112, 460 A.2d 791 (1983); 18 Pa.C.S. § 311(c)2, 4.

Here, the jury heard evidence that, at the time of her death, the victim's alcohol level was 0.36% in her blood and 0.40% in her stomach, levels almost four times in excess of the permissible alcohol level for operating a motor vehicle in the Commonwealth. The medical examiner testified that the victim would have shown significant impairment because of her level of intoxication. From this evidence the jury could conclude that the victim was not in a positin to make an intelligent and knowing decision to permit Appellant to enter the apartment and could conclude that the entry was without permission. Furthermore, since the evidence surrounding the entry supports a conclusion that it was unauthorized, it may be inferred that Appellant entered the apartment with the intent to commit a burglary. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982); *Commonwealth v. Hardick*, 475 Pa. 475, 380 A.2d 1235 (1977).

There was also evidence that the victim's bedroom had been ransacked and that a television and $29.00 in change taken from Mr. Holman's bedroom were found in Appel-

lant's possession. All of this evidence taken together was sufficient to demonstrate that Appellant entered the victim's apartment without license with the intent to commit a crime therein, and therefore we conclude that the burglary conviction was supported by substantial evidence.

■ Appellant also argues that the evidence was insufficient to support the conviction of involuntary deviate sexual intercourse. This crime is committed when a person forces another person by actual physical compulsion or threats thereof to engage in acts of anal or oral intercourse. 18 Pa.C.S. § 3101 and § 3123.

From the fact that the victim was found strangled to death on her bed, with her upper torso draped on the bed and her lower body dangling to the floor supported only by her knees, her shirt pulled up over her shoulders, the rest of her body being unclothed, the presence of live sperm in her vagina, rectal tears and bleeding, and with a shirt having been stuffed into her rectum with the use of a crutch, the jury could have found beyond a reasonable doubt that she had been sexually assaulted and forcibly sodomized. Furthermore, the evidence was clear that Appellant had access to the victim and the opportunity to commit the crime, and the jury could have concluded beyond a reasonable doubt that Appellant committed this crime. See, *Commonwealth v. Perrin*, 484 Pa. 188, 398 A.2d 1007 (1979).

■ Appellant also challenges his rape conviction because, according to him, there was no evidence that he penetrated her. Appellant reaches this conclusion by arguing that one of the witnesses for the Commonwealth, Dr. Szojka, gave testimony which was directly in conflict with another Commonwealth witness on the issue of the presence of spermatozoa found in the victim. Appellant argues that this other Commonwealth witness, Dr. Catherman, testified that the spermatozoa that he found on a swab taken from the body of the victim was consistent with a conclusion that intercourse took place before the day of the murder because the spermatozoa heads and tails were detached. Such an observation is indicative of sperm that are

older than two days in age and are dead and that they could not have been deposited by Appellant.

Dr. Szojka's testimony was based on his own observations from sperm samples which were taken from another swab and tests that were done within two days of death. His observations were that live sperm were still present which were consistent with a finding that intercourse occurred around the time of death and that the sperm sample contained no traces of blood. This phenomenon occurs when the sample comes from a non-secretor, a person who does not secrete blood traces in his body fluid secretions. Such occurrences are rare (20% of the population) and an analysis of Appellant's blood indicated that he is a non-secretor. Such evidence was important to establish Dr. Szojka's conclusion that the sperm found in the victim came from Appellant.

Thus, because these two experts arrived at different conclusions based on their testings of two different samples, Appellant argues that Dr. Szojka's testimony should have been stricken and cites to us the case of *Commonwealth v. Gonzales*, 463 Pa. 597, 345 A.2d 691 (1975), in support of his argument that where two experts give conflicting opinions, the jury should not be required to guess between the contradictory evidence offered by the same party.

The alleged contradiction in testimony offered by the two Commonwealth witnesses was explained because each expert prepared his own slide from different samples taken from the vaginal swab and from the fact that at the time of emission not all spermatozoa are intact, that is with tails connected to the heads. Because of this, it was not inconsistent for the one sample to show sperm with the heads attached to the tails and the other one to show tailless sperm and, therefore, the two slide samples are consistent with a conclusion that the sperm was deposited at or near the time of death. The jury was aware that some spermatozoa are deposited without heads and therefore could conclude that the difference in medical opinions arose from this

fact. Thus, we do not view the medical testimony to be inconsistent and Appellant's reliance on *Gonzales* is misplaced.

Reviewing the evidence submitted to establish that the victim had been raped, we note that the body was discovered face down on the edge of the bed. The victim had been strangled, the mattress and bedclothes were bloodstained, and the body was naked from the shoulders down with the clothing of the upper torso being shoved over the shoulders. There were bruises on the front and inside of both the victim's thighs. Her face was beaten and there was prominent swelling and discoloration of both eyes. There was a bite mark on the victim's cheek consistent with Appellant's teeth structure which was also consistent with Appellant inflicting this bite mark while he was face-to-face with the victim. The Appellant's boxer shorts were stained on the front and back with human blood, and live spermatozoa from a non-secretor were found in the victim's vagina. All of this evidence, when viewed together, is sufficient to support a finding that Appellant engaged in sexual intercourse with the victim by forcible compulsion and thus the rape conviction must be sustained. 18 Pa.C.S. § 3121.

Since we find that sufficient evidence exists to support the convictions for burglary, involuntary deviate sexual intercourse and rape, those convictions are affirmed.

Appellant next challenges the trial court's decision to permit Dr. Catherman to give his opinion concerning the pain the victim experienced during the murder in the guilt phase of the trial. Appellant argues that this evidence was not relevant in establishing any of the elements of the murder charge and was only relevant in establishing whether the killing was committed by means of torture. Such evidence would be admissible during the sentencing phase, but by referring to the victim's pain during the guilt phase, Appellant argues that the jury's passions were inflamed against him and therefore admission of such evidence was prejudicial.

Dr. Catherman was the medical examiner who conducted the post-mortem examination on the victim. He testified that he discovered in the victim's pelvic-peritoneal cavity a woman's blouse, which had been rolled into a ball and forcefully shoved through the intestinal wall via her rectum. Dr. Catherman also told the jury that his examination revealed that an injury extending twenty-three inches from the victim's vaginal opening was found. This injury extended through the vagina into the abdominal cavity, the liver, the diaphragm, the sac surrounding the heart, the right lung, and into the upper portion of the right pleural cavity. In regards to these injuries, the Doctor opined that they were caused by the forceful insertion of an object, like the crutch found at the murder scene, and that the effect of this item being inserted in a human body would cause considerable pain and discomfort.

It is this conclusion which Appellant finds to have been improperly received into evidence and he argues was inflammatory and prejudicial. We disagree. Such a conclusion was not overstated or dramatic and, in fact, was a natural inference to be drawn from the evidence. It does not require much skill or scientific expertise to know that ramming a crutch up one's vaginal opening for twenty-three inches and stuffing a shirt up one's rectum using the same impaling device would cause one considerable pain and discomfort. Evidence of continuing infliction of excruciating pain is relevant to the issue of intent to kill.

The witness did not dwell on the subject and the prosecutor was careful in not overemphasizing the suffering and pain which the victim experienced during her attack during his closing to the jury. Accordingly, we do not see how Appellant was prejudiced and his contrary argument is dismissed.

Appellant also argues that the trial court erred in admitting into evidence a hatchet found at the murder scene because one of the Commonwealth witnesses, Mr. Holman, testified that when he returned home and realized that the apartment may have been burglarized, he went into a closet

and retrieved the hatchet and later placed it under his bed. Appellant argues from this evidence that it establishes that the hatchet could not have been used in the commission of the crime and that, therefore, it should not have been introduced into evidence.

A chemical analysis of the blunt end of the hatchet, however, revealed traces of human hair matching the microscopic characteristics of the victim's hair and the post-mortem examination revealed that the victim suffered numerous blunt force injuries to her face, legs, chest, and genital and rectal areas caused by some object making forceful contact with these various parts of her body.

The Commonwealth argues that this evidence established a sufficient foundation to permit an inference that the hatchet may have been used as a weapon at some point during the murder and that it was properly admitted. There is no requirement that the Commonwealth establish that the hatchet was the weapon actually used in the attack before it can be introduced into evidence. The only burden is to show sufficient circumstances to justify such an inference. *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977); *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976). If a proper foundation is laid, the weapon is admissible where the circumstances raise an inference of the likelihood that it was used. *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973). Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand. *Ford*.

We view the Commonwealth's evidence to be sufficient to justify an inference of the likelihood that the hatchet was used during the murder from the fact that the victim's hair particles were found on the blunt end of the weapon and from the blows on the victim's body which could have been caused by the hatchet.

Whether the jury chose to reject such an inference in favor of the inference that Appellant wishes that the jury

had made, (i.e., that the hatchet was in the closet during the murder and could not have been used during the attack on the victim) depended on the weight the jury wished to place on the evidence. We conclude that the Commonwealth laid a proper foundation for the introduction into evidence of the hatchet as a possible weapon used during the murder and that therefore it was properly admitted into evidence.

Holman's account did not automatically render evidence of the hatchet inadmissible especially since he could not discount the possibility that the weapon was taken from the closet, used in the murder, and returned to the closet. The jury was free to believe all, part, or none of the evidence, and could well have questioned Holman's recall. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978). There was no error committed by the trial court in admitting the hatchet into evidence.

Having concluded that Appellant's allegations of error during the guilt phase of the trial are all meritless, we conclude that the convictions were properly found and affirm same. We now turn to a review of the penalty phase and Appellant's four allegations of error.

As required by statute,[2] following the verdict of murder of the first degree returned by the jury, a separate sentencing hearing was conducted. Based upon the evidence presented at the hearing, the jury found that three aggravating circumstances were present; namely, that Appellant "committed a killing while in the perpetration of a felony," (42 Pa.C.S. § 9711(d)(6)); that the Appellant "... had a significant history of felony convictions involving the use or threat of violence to the person," (42 Pa.C.S. § 9711(d)(9)); and that the death "... was committed by means of torture," (42 Pa.C.S. § 9711(d)(8)). No mitigating circumstanc-

---

**2.** 42 Pa.C.S. § 9711(a)(1) provides:

After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

es were found and, pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), the jury fixed the penalty at death[3].

First, Appellant argues that the three aggravating circumstances found by the jury were improperly found. His first claim is that insufficient evidence existed to support the jury's finding of aggravating circumstance six and that it was error for the Commonwealth to have argued to the jury that the killing was committed during the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6). Since sufficient evidence exists in the record to support the convictions for burglary, involuntary deviate sexual intercourse and rape, and since the record shows that these crimes were committed during the murder, it was entirely proper for the Commonwealth to argue in support of a finding of aggravating circumstance six. That being the case, the jury was within its bounds in finding this as an aggravating circumstance and Appellant's contrary argument is dismissed.

Appellant also challenges the propriety of the jury's findings of aggravating circumstances nine and eight. Concerning aggravating circumstance nine, Appellant argues that the evidence introduced by the Commonwealth was insufficient to support the jury's finding that Appellant had a significant history of felony convictions involving the use or threat of violence to the person (42 Pa.C.S. § 9711(d)(9)).

The evidence submitted to establish this aggravating circumstance consisted of a 1978 felonious aggravated assault and indecent assault conviction and a 1984 conviction for criminal trespass. Concerning the 1978 conviction, Appellant posits that the indecent assault, being a misdemeanor of the second degree, should not have been mentioned to the jury. This overlooks the fact that this conviction was part of one criminal transaction involving the

---

3. 42 Pa.C.S. § 9711(c)(1)(iv) provides in pertinent part:
 (c) Instructions to jury.—
 (1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:
 (iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance ...

felonious aggravated assault of a three year old. The victim suffered lacerations to his rectum and damage to his intestines and the wounds were severe enough to require surgery. Evidence of this crime was admissible because there was a logical connection between the crimes and because they arose out of the same criminal episode. See, *Commonwealth v. Steele*, 522 Pa. 61, 559 A.2d 904 (1989); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955).

Appellant also argues that evidence of his 1984 conviction of criminal trespass was inadmissible to establish his prior history of felony convictions involving the use or threat of violence to the person because criminal trespass is not a crime of violence. We disagree. In *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988), we had occasion to review whether a burglary conviction qualified as a crime of violence that could be submitted as evidence to establish the aggravating circumstance under consideration now. We had little trouble in concluding that unprivileged entries into buildings and structures where people are likely to be found is a clear threat to the safety of those therein and held that the Legislature's grading of the crime of burglary as a felony of the first degree was intended to guard against this threat of violence. Our holding in *Rolan* is particularly applicable here.

The crime of criminal trespass is committed when a person enters a building or occupied structure knowing that he is not licensed to do so (18 Pa.C.S. § 3503) and is graded as a felony of the second degree. We note that the basic element of this crime is an unprivileged entry and that this same element is the first element in any burglary. What makes burglary more serious in nature is the added element of intent to commit a crime while inside the building or occupied structure. (18 Pa.C.S. § 3502).

Because of this additional harm, the Legislature graded burglary as a felony of the first degree and set the penalty at up to twenty years imprisonment. Without this added element, the crime is called criminal trespass and is graded as a felony of the second degree and the Legislature has set

the penalty at up to ten years imprisonment. We have little trouble in concluding that a penalty of ten years imprisonment for an unprivileged entry into a building or occupied structure is directly related to protecting society against the threat of violence to persons and that evidence of a criminal trespass conviction, like that of a burglary conviction, can be used by the Commonwealth, as it was in this case, to establish aggravating circumstance nine.

Appellant next argues that the jury's finding of aggravating circumstance eight (torture) cannot be sustained because the court's charge was improper and because the evidence was insufficient to support this finding. Both arguments are without merit.

In charging a sentencing jury on the aggravating circumstance that "the offense was committed by means of torture" (42 Pa.C.S. § 9711(d)(8)), we have indicated that a trial court should channel the jury into considering whether the evidence supports a finding that the defendant intended to inflict a considerable amount of pain and suffering on the victim which is unnecessarily heinous, atrocious or cruel, manifesting exceptional depravity. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987).

Here, the trial court defined torture to the jury as "the intentional infliction of a considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious or cruel manifesting exceptional depravity". We see nothing improper with this definition and, in fact, it comports with the definition we approved in *Nelson*. Appellant's contrary argument is meritless.

Appellant also argues that the evidence submitted to the jury on torture was insufficient to show that the victim was conscious during the murder and, therefore, the Commonwealth could not show that the victim suffered considerable pain or that Appellant intended to torture his victim. We disagree.

We have held that a jury may determine from the acts themselves whether a defendant intends to use

means of torture while killing and that medical evidence can be used to establish whether the victim was alive while being tortured. See, *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989). How long a victim can withstand the cruel, depraved attacks of her murderer before unconsciousness overtakes the mind is not part of the Commonwealth's burden nor is such a consideration part of the aggravating circumstance under discussion. The means used by the actor are reviewed to determine whether *he* intended to use them in such a way as to cause considerable pain and suffering before death. To respond that the victim suffered no such pain or suffering because she was unconscious is only to admit that the pain and suffering was so great that the victim's mind could no longer stand to be subjected to such atrocities committed on her person and the mind, in showing mercy to the body, turns itself off so that some relief can be had, while the tormentor, undaunted by his victim's state, continues to inflict blow after blow until his final aim is accomplished.

We reject the suggestion that the Commonwealth be required to prove how long a victim can withstand an attack or how long the victim was conscious as a measure of how much pain and suffering was experienced. We think the assaults committed upon the victim speak for themselves and we accordingly find that the evidence was more than sufficient to establish that the manner of death was more than mere overcoming of the victim's resistance. As we recently stated in *Commonwealth v. Steele,* 522 Pa. 61, 559 A.2d 904 (1989), a jury has the right to "believe that the known infliction of aimed organ smashing blows was deliberate practice in the art of killing, observing with satisfaction both the pain and disability inflicted".

As in *Steele,* we are satisfied that the jury was justified in finding that the victim was tortured by a deliberate, selected ingredient added to a felonious killing.

Finally, Appellant complains that his trial counsel did not advise him that he could put on evidence of mitigating circumstances and that this omission was prejudicial

ineffectiveness. The record plainly belies this allegation. Not only did the prosecutor and trial counsel advise Appellant of this right, but the trial court conducted an on-the-record colloquy and specifically asked Appellant if he wished to present any evidence of mitigation. After consultation with trial counsel, the Appellant specifically declined the invitation to proceed with such evidence. In spite of this, the trial court charged the jury that it could consider as mitigating circumstances all of the statutory circumstances (42 Pa.C.S. § 9711(e)) and that, in addition to these circumstances, the jury could consider any other mitigating circumstance it chose to. We see no error and reject Appellant's contrary allegation.

The evidence was sufficient to establish the three aggravating circumstances presented and since no mitigating circumstances were found by the jury, it properly set the penalty at death. 42 Pa.C.S. § 9711(c)(1)(iv).

 Pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases" (42 Pa.C.S. § 9711(h)(3)(iii)), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under our Death Penalty Statute, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts. (See *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). That review reveals no excess or disproportionality in the sentence imposed as compared to other first degree murder cases where the evidence involved the three aggravating circumstances found here and no mitigating circumstances.

For the foregoing reasons, we sustain the convictions and affirm the judgment of sentence. The Prothonotary of the Eastern District is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor pursuant to 42 Pa.C.S. § 9711(i).

NIX, C.J., did not participate in the consideration or decision of this case.