J. S09003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM RUSH, | : | No. 1375 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 18, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0005136-2012

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 27, 2015**

Appellant appeals from the judgment of sentence following his conviction for drug and firearm offenses.  Finding no merit in the issue raised on appeal, we affirm.

The trial court accurately summarized the events leading to appellant's arrest:

> The evidence presented at trial established that on December 12, 2011, Pittsburgh Police Officers Santino Achille and Joshua Whaley were on patrol at approximately 9:00 p.m. in the Spring Garden Avenue area on the North Side of Pittsburgh. (N.T. 44). They were in an unmarked car,[Footnote 1] conducting surveillance in a high crime, high drug trafficking area. (N.T. 44-45). As the officers approached Ryan Place, a housing development, Officer Achille observed a black Oldsmobile Bravada stopped in front of the building and two (2) individuals approach the vehicle, including the Defendant, William Rush, whom the

officer recognized. (N.T. 48-49). He also recognized the other person, Shawn Pruitt. (N.T. 49-50).

> [Footnote 1] Though the vehicle was unmarked, Officer Achille testified that is [sic] was regularly recognized as a police vehicle because it had been used in that area for several years. (N.T. 51).

As the Defendant reached the passenger side of the vehicle, Officer Achille saw him look in the direction of the police vehicle and ". . . . appear very alarmed, wide-eyed, stopped in his track for no apparent reason." (N.T. 51). According to Officer Achille, after the Defendant noticed their vehicle, ". . . he then bladed his body, turned in a position where he hid the front of his waistband, would be facing away from our vehicle." (N.T. 51-52). The Defendant then reached across his body with his right hand, keeping his left hand at his waistband, opened the rear passenger door and got in.[Footnote 2] Pruitt entered the front passenger side. (N.T. 52).

> [Footnote 2] Officer Whaley testified that, in his experience in making over a hundred arrests for persons possessing firearms, it is common for such persons, when they see law enforcement, to ". . . grab their waist or touch their waist to make sure the object, the firearm, is secure where it is at." (N.T. 82).

The Bravada pulled away from the curb, into traffic. The driver did not use the turn signal. Upon observing this traffic violation, Officer Achille decided to stop the vehicle. (N.T. 53). He activated the vehicle's lights and siren, and the vehicle pulled over, still near the Ryan Place development and in an area with substantial overhead lighting. (N.T. 53-54).

Officer Achille approached the driver's side of the vehicle while Officer Whaley approached the

passenger side. They both used their flashlights to illuminate the interior of the vehicle. (N.T. 54). Officer Achille asked the driver to lower the windows in the vehicle, and he complied. (N.T. 69-70). In speaking to the driver, Officer Achille determined that he was a jitney driver. The driver was cooperative. There was no passenger in the rear on the driver's side. While speaking with the jitney driver, he observed Officer Whaley on the other side of the vehicle make a hand gesture over the top of the vehicle that he knew was intended to indicate that there was a firearm in the vehicle. (N.T. 55-57).

Before making that gesture, Officer Whaley, as he approached the rear of the vehicle, ". . . observed the rear right passenger kind of lift up off his seat and turn, and he had an object in his left hand." (N.T. 83). Officer Whaley believed that object ". . . to be a large silver revolver." (N.T. 83). He saw the Defendant throw the object with his left hand into the cargo area of the Bravada. (N.T. 83). He shined his light in that area and saw a large, silver revolver laying [sic] there. He then gestured to Officer Achille to alert him to the presence of a weapon and then radioed for backup, using "Code 2", indicating that a quick back-up response with lights and sirens is necessary. (N.T. 84).

As other officers arrived, Officer Whaley asked the Defendant to exit the vehicle. He did, was handcuffed and placed in the rear of a police vehicle. Officer Whaley returned to the rear of the vehicle and retrieved the weapon, a loaded, .44 caliber Smith and Wesson revolver, found later to be in good working order. (N.T. 88, 91). Officer Whaley then retrieved, from the floor where the defendant was seated, a quantity of prepackaged stamp bags of heroin that he had noticed as he removed the Defendant from the vehicle.[Footnote 3] (N.T. 91-92). A search of the vehicle and of the Defendant's person revealed that he had no money, nor did he possess any paraphernalia that could have been used to ingest the heroin. (N.T. 96-97). The

Defendant also did not exhibit any of the physical characteristics that people who regularly use heroin generally possess. He did not seem under the influence and had no apparent needle marks. (N.T. 95-97).[Footnote 4]

[Footnote 3] The Allegheny County Crime Lab found the substance in the 44 packages to indeed be heroin, with a weight of 2.03 grams. (N.T. 95).

[Footnote 4] The other occupants, Shawn Pruitt and the jitney driver, were released after the defendant's arrest. (N.T. 74).

Trial court opinion, 9/19/14 at 4-7.

On January 24, 2013, a jury convicted appellant of possession of a controlled substance, possession of a controlled substance with intent to deliver, firearms not to be carried without a license, and false identification to a law enforcement officer.[1] On April 18, 2014, appellant was sentenced to an aggregate term of 7 to 14 years' imprisonment. This timely appeal followed.

Appellant raises a single issue on appeal, contending that the evidence of his constructive possession of the heroin found in the jitney taxicab was insufficient to support his drug-related convictions. We disagree.

We note our standard of review:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict

---

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), 18 Pa.C.S.A. §§ 6106(a)(1), and 4914(a), respectively.

winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." ***Id.***; ***see also*** [***Aguado***, 760 A.2d at 1185] ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). "[W]here no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." ***Commonwealth v. Thomas***, 522 Pa. 256, 561 A.2d 699, 704 (1989).

Thus, our Courts have recognized that proof of guilt may be inferred entirely from evidence of circumstances that attended the commission of the crime. ***See Brewer***, 876 A.2d at 1032. "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." ***Id.*** (quoting ***Commonwealth v. Murphy***, 795 A.2d 1025, 1038-39 (Pa.Super.2002)). Nevertheless, "[t]he requirement of the law [remains] that in order to warrant a conviction[,] the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt." ***Commonwealth v. Bybel***, 531 Pa. 68, 611 A.2d 188, 189 (1992) (quoting ***Commonwealth v. New***, 354 Pa. 188, 47 A.2d 450, 455 (1946)).

*Commonwealth v. Kinard*, 95 A.3d 279, 291-292 (Pa.Super. 2014) (*en banc*), quoting *Commonwealth v. Barker*, 70 A.3d 849, 854 (Pa.Super. 2013) (*en banc*), *appeal denied*, 87 A.3d 814 (Pa. 2014).

Moreover, we note that appellant was not found with the heroin on his person; in such circumstances, the Commonwealth must show constructive possession:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super.2012), *appeal denied*, 619 Pa. 697, 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Bricker*, 882 A.2d 1008, 1016-1017 (Pa.Super.2005).

*Kinard*, 95 A.3d at 292.

We find that the evidence at trial sufficiently supports a finding that appellant constructively possessed the heroin. The heroin packets were found contained in a "brick wrapper," which package was observed at

appellant's feet as he was removed from the jitney. Police Officer Joshua Whaley testified that after appellant threw his gun into the cargo compartment of the Bravada, "he kind of sat forward." (Notes of testimony, 1/23-24/14 at 84-85.) Such action would be consistent with appellant placing the drugs on the floor of the jitney. Finally, appellant was the only passenger in the rear seat of the jitney. We find these facts to be sufficient for the jury to conclude that appellant constructively possessed the heroin.

Appellant offers several reasons why he should not be found to be in constructive possession. First, appellant argues that a previous passenger of the jitney could have left the drugs on board. However, we agree with the Commonwealth that the high value of the heroin made it extremely unlikely that a prior passenger left it in the jitney.

Second, appellant contends he must have been unaware of the heroin; otherwise, he would have thrown it into the passenger compartment of the Bravada as he did with his gun. This does not indicate that appellant was unaware of the heroin. He may simply have concluded that the approaching police officers were now too close to risk throwing the drugs into the cargo compartment.

Third, appellant argues that awareness of the presence of contraband is necessary to possession and that he could not know of the presence of the heroin because it was contained in an opaque brick wrapper. We find this suggestion to be specious. Merely because the heroin was in an opaque

container gives no indication that appellant was not aware of what was in the container. Further, as the Commonwealth notes, a brick wrapper is distinctive with the dealing of drugs.

Fourth, appellant argues that the other passenger was not searched to determine whether he possessed similarly packaged heroin which would indicate the heroin belonged to him. To this we respond that such a finding would merely incriminate the other passenger, it would not exonerate appellant. As we noted, joint constructive possession is possible and there was sufficient evidence to find appellant constructively possessed the drugs found in the rear passenger area.

Finally, appellant argues that no money or heroin was found on his person and he did not show any signs of being a heroin user. The fact that appellant had no heroin or money on him is not persuasive. Drug dealers often have one party possess and manage the cash while another party possesses and manages the drugs. Moreover, appellant's argument here is merely consistent with his being a drug dealer as opposed to a drug user. It certainly does not indicate that he did not constructively possess the heroin.

Appellant also relies primarily on two cases which he contends support a finding that the evidence was insufficient to support constructive possession under the circumstances of this case. In **Commonwealth v. Juliano**, 490 A.2d 891 (Pa.Super. 1985), an informant told police that Edward Drueding agreed to meet Chris DiBona at Philadelphia International

Airport as DiBona was flying in with a shipment of counterfeit drugs. The informant later told police that Drueding was proceeding to the airport with Joseph Cobuccio. Police observed Drueding and Cobuccio meet with DiBona and then proceed to the baggage claim area without DiBona. At the baggage claim area, Drueding and Cobuccio retrieved a green satchel which later was found to contain the counterfeit drugs. Drueding and Cobuccio were then observed driving away from the airport and proceeding to the Airport Sheraton Hotel where DiBona and the defendant joined them. When stopped by police, Cobuccio was in the driver's seat, Drueding was in the front passenger seat, the defendant was in the left rear passenger seat, and DiBona was in the right rear passenger seat. The informant had not implicated the defendant in any way. The defendant made no furtive movements toward the satchel when police stopped the vehicle. The green satchel was ultimately found on the floor in front of the defendant's seat, and the defendant was convicted for the constructive possession of the counterfeit drugs.

On appeal, this court reversed based upon the lack of evidence that the defendant was aware as to the contents of the green satchel. The court noted that the informant had not implicated the defendant, that the defendant had not made furtive motions toward the satchel, that other individuals in the car had equal access to the satchel, and that the defendant

had not attempted to escape. The court held that mere proximity to the contraband was not conclusive of guilt.

Appellant attempts to liken *Juliano* to his situation, claiming that there was no evidence that he was aware as to the contents of the brick wrapper, that he made no motions toward it, that another individual had equal access to it, and that he did not attempt to flee. We reject appellant's argument. Appellant's argument ignores the fact that in *Juliano*, there was overwhelming evidence that the other three individuals in the car not only knew what the satchel contained, but each had been observed displaying a conscious dominion and intent to control the satchel. The defendant, on the other hand, may merely have unwittingly chosen the wrong place to sit.[2]

Instantly, there was no evidence that anyone other than appellant manifested a conscious dominion or intent to control the brick wrapper. The brick wrapper was found where appellant's feet had been. Moreover, the police testified that appellant "kind of sat forward" as they approached, which, we have noted, is consistent with a display of conscious dominion over the drugs. Thus, we find *Juliano* to be inapposite.

Next, appellant cites to *Commonwealth v. Spencer*, 621 A.2d 153 (Pa.Super. 1993). In *Spencer*, following a vehicle stop, cocaine was discovered in the driver's door storage compartment. Spencer, the front

---

[2] The defendant testified that he had met DiBona by chance at the Sheraton and accepted an offer of a ride to Atlantic City after his own ride failed to appear. *Juliano*, 490 A.2d at 505 n.3.

seat passenger, was found guilty on a constructive possession theory. On appeal, this court reversed, finding that there was no evidence that the passenger even knew of the cocaine's existence, let alone exercised conscious dominion. *Spencer* reiterated *Juliano*'s admonitions that guilt by association is unacceptable and that the mere presence of one person among a group at a scene of contraband is not a strong factor indicative of guilt.

*Spencer* is easily distinguished. The drugs there were found in much greater proximity to the driver, and it was obvious that the driver possessed the cocaine because he scuffled with the police, attempted to flee, and attempted to throw the bag of cocaine away. There was no evidence that the passenger ever exhibited conscious dominion over the cocaine or even knew of its existence. Instantly, however, appellant was the person most proximate to the contraband, which was sitting at his feet, and he was observed to make a forward motion, which may have indicated that appellant took the brick wrapper from his person and placed it on the floor of the jitney. *Spencer* is likewise inapposite.

Appellant also cites other cases without discussion. We find these other cases to be similarly distinguishable. In sum, we find the evidence in this case to be sufficient to support a theory of constructive possession. The drugs were found at appellant's feet, he made a motion consistent with conscious dominion, and no other person could reasonably have been

considered to be in possession of the drugs.  Therefore, we will affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2015