J-S25013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BOBBY STANFORD JOHNSON, | |
| Appellant | No. 1305 WDA 2014 |

Appeal from the Judgment of Sentence Entered July 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-03-CR-0009830-2013

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                 **FILED JUNE 03, 2015**

Appellant, Bobby Stanford Johnson, appeals from the judgment of sentence of 6-12 months' incarceration and a concurrent term of 10 years' probation, imposed following his conviction for burglary and related offenses. After careful review, we affirm.

Appellant's conviction stems from the events of June 17, 2013, when Jonathan Marshall discovered Appellant inside a house at 223 Spruce Street in Clairton (House), the home of Marshall's deceased mother who had passed away five years prior.  At around 9 p.m., Marshall picked up his wife and six children from a bible school held at a church across the street from the House.  At that time, he noticed the door of the House was open.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Marshall recalled locking the door a few days earlier. He went to the House to investigate, and on the way he discovered Dehlia Brown in a blue van parked in front of the House. Marshall informed Brown that he was going to call the police, and she urged him against that course of action.

After the short exchange with Brown, Marshall proceeded to walk towards the House. Marshall then entered the House and found Appellant, whom Marshall knew from previous encounters, and another man, Jordan Spencer, standing in the living room. Marshall observed Appellant holding the stainless-steel door of a refrigerator in his hands. He also saw that the House's stove and several beds had been moved into the living room. Marshall confronted Appellant, asking Appellant what he was doing in the House. Appellant replied that he did not know the House belonged to Marshall.

Marshall followed as Appellant left the House. Marshall watched as Appellant got into the blue van with Brown and Spencer. Marshall testified that he saw them put something into the van, but Marshall did not know what it was. The van then quickly departed. Marshall's wife called the police, who traced the blue van's license plate, leading to Brown's home, where Brown and Spencer were arrested that same evening. Marshall picked Appellant and Spencer from a police photo array as the two men he observed in the House. Appellant eventually turned himself in after a warrant was issued for his arrest.

The Commonwealth charged Appellant with burglary,[1] criminal conspiracy,[2] criminal trespass,[3] theft,[4] terroristic threats,[5] simple assault,[6] and attempted theft.[7] The terroristic threats, simple assault, and attempted theft charges were withdrawn prior to trial. Following a jury trial held on April 15-16, 2014, Appellant was found guilty of burglary and criminal trespass, and not guilty of conspiracy and theft.

On April 28, 2014, Appellant filed a motion for judgment of acquittal, which was denied by the trial court on July 10, 2014. Also on July 10, 2014, the trial court sentenced Appellant to 6-12 months' incarceration and a concurrent term of 10 years' probation for burglary, and to no further penalty for criminal trespass. On August 8, 2014, Appellant filed a timely notice of appeal and a Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on December 12, 2014.

Appellant now presents the following questions for our review:

_____

[1] 18 Pa.C.S. § 3502(a)(2).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 3503(a)(1)(ii).

[4] 18 Pa.C.S. § 3921(a).

[5] 18 Pa.C.S. § 2706(a)(1).

[6] 18 Pa.C.S. § 2701(a)(3).

[7] 18 Pa.C.S. § 901.

1. Whether the Court of Common Pleas erred as a matter of law by entering a guilty verdict against Appellant as to the charge of Burglary, when the defense of Abandonment presented by the Appellant was a full and complete defense to the said offense.

2. Whether the Court of Common Pleas erred as a matter of law by entering a guilty verdict against Appellant as to the charge of Burglary, when the Commonwealth failed to present sufficient evidence that Appellant had the requisite intent to commit a crime in the structure.

3. Whether the Court of Common Pleas erred as a matter of law when it entered a guilty verdict against Appellant as to the charge of Criminal Trespass, when Commonwealth failed to present sufficient evidence to satisfy the "breaks in to" element necessary to support a conviction [] under 18 Pa.[]C.S. § 3503([a])(1)([ii]).

Appellant's Brief, at 5.

Each of Appellant's claims presents a challenge to the sufficiency of the Commonwealth's evidence supporting his convictions for burglary and criminal trespass. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

- 4 -

Appellant's first sufficiency claim concerns the matter of abandonment. Appellant contends that because the House was abandoned, "It is a defense to prosecution for burglary if[,] … at the time of the commission of the offense[,] … [t]he building or structure was abandoned." 18 Pa.C.S. § 3502(b)(1). In *Commonwealth v. Henderson*, 419 A.2d 1366 (Pa. Super. 1980), this Court held that an abandoned building or structure is one that has been "wholly forsaken or deserted." *Id.* at 1367. Thus, abandonment is not proven merely because a building or structure is uninhabited; evidence that the building or structure is being maintained is enough to render the defense of abandonment inapplicable. *See id.* And, because the "defense of abandonment has no mental element," a mistake of fact regarding whether a building or structure has been abandoned is "irrelevant" to the defense of abandonment. *Id.* at 1368.

Appellant contends that the evidence at trial suggested that the House is

> a rundown, ramshackle of a house, that is titled to a person who has been dead for over five years, [where the] radiators have been removed, [where the] front door is frequently [left] wide open, and that had been vacant for well over a year by the time of the alleged burglary; all factors which, when taken together, indicate that the property has been forsaken or deserted and therefore, abandoned.

Appellant's Brief, at 13.

It is certainly true that Appellant's testimony and Appellant's mother's testimony support this characterization of the House. However, that testimony conflicted with Marshall's testimony. Marshall testified that he

- 5 -

inherited the House after the death of his mother and brother, and that it had been occupied by his sons only a few months prior to the June 17, 2013 incident. N.T., 4/15/14, at 35-36. He stated that the House "was pretty much in order. Because I always kept it just like my mother's house, like a shrine kind of [sic] to me." *Id.* at 36. During cross-examination, Marshall maintained that although he no longer lived there—and had not for the better part of 30 years—he did maintenance on the House and paid someone to cut the grass. *Id.* at 46. He also stated that he checked on the House "on a regular basis." *Id.* at 51.

Our standard of review dictates that we must view this conflicting evidence "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Widmer*, 744 A.2d at 751. Moreover, the jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa. Super. 2003). Thus, the jury was free to believe Marshall's testimony, and also free to find the defense witnesses' testimony not credible. Accordingly, we conclude that the Commonwealth produced sufficient evidence that the House had not been "wholly forsaken or deserted." *Henderson*, 419 A.2d at 1367. Thus, Appellant's first claim lacks merit.

Next, Appellant claims that there was insufficient evidence that he intended to commit a crime in the House and, thus, that there was insufficient evidence to prove the *mens rea* element of burglary.

"Under Pennsylvania law the crime of burglary is defined as an unauthorized entry **with the intent to commit a crime after entry**." ***Commonwealth v. Alston***, 651 A.2d 1092, 1094 (Pa. 1994) (emphasis added) (citing 18 Pa.C.S. § 3502). The requisite intent "may be inferred from the circumstances surrounding the incident." ***Id.*** (citing ***Commonwealth v. Hardick***, 380 A.2d 1235 (Pa. 1977); and ***Commonwealth v. Wilamowski***, 633 A.2d 141 (Pa. 1993)). Furthermore, "[t]his intent may be inferred from actions as well as words. However, actions must bear a reasonable relation to the commission of a crime." ***Id.*** Nevertheless, merely being unlawfully present in the building or structure is not enough to demonstrate the *mens rea* element of burglary. ***See Commonwealth v. Muniem***, 303 A.2d 528, 529 (Pa. Super. 528).

Appellant argues that that he did not possess any instrument of crime, no thieves' tools, no means of forcible entry, no weapon, and nothing to hide his identity. Appellant points to the fact that his entry occurred in daylight and right across the street from a church, circumstances that are "not suggestive of [] intent to engage in criminal activity." Appellant's Brief, at 15. He also claims there was no evidence that he forcibly entered the House. He also downplays being caught with a refrigerator door in his hand, "which appears to have been lying about in the house before Appellant

- 7 -

entered the house, and which is an innocuous item that is not suggestive of any criminal intent." ***Id.***

The trial court found, however, that sufficient evidence was offered to support the *mens rea* element of burglary:

> When the home owner, Mr. Marshall[,] entered the home through the damaged door area, he saw [Appellant] with the stainless steel door of his refrigerator in his hands. Upon being caught, [Appellant] dropped the door, made his way past Mr. Marshall[,] and quickly left the house. Intent to take things which were not his was established to a sufficient degree to justify the jury's verdict.

Trial Court Opinion, 12/12/14, at 5.

We agree with the trial court, and disagree with Appellant, regarding the import of Marshall's finding Appellant with the refrigerator door in his hand. Appellant is disingenuous in suggesting the innocuousness of that fact. The door had at least some value as scrap. It was also within the purview of the jury to determine whether there might be any non-criminal reason why Marshall would be holding that door other than because he intended to steal it. Marshall also testified that a stove and several beds from the House had been moved into the living room, and the jury could have inferred that the items were moved by Appellant and Spencer given their physical and temporal proximity to the items and Marshall's surprise at their resting place. Additionally, Brown was waiting outside in a van, which ultimately departed the House with Appellant and Spencer as passengers, an additional fact that supported Appellant's criminal intent.

We conclude that the jury could have reasonably surmised from these collective facts that Appellant intended to use the van to steal several large items from the House, a plan that was thwarted when Marshall unexpectedly interrupted it. Accordingly, Appellant's second claim lacks merit.

Finally, Appellant claims that there was insufficient evidence to support his conviction for criminal trespass, asserting that there was no evidence that he broke into the House.

> A person commits [the offense of criminal trespass] if, knowing that he is not licensed or privileged to do so, he: (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S. § 3503(a)(1).

Appellant argues that because there was some evidence that the doors of the House were frequently open, and because no one observed Appellant breaking into the home, there was insufficient evidence that he broke into it. We disagree. Appellant testified that he had been at the home a few days before this incident, and that the door was locked at that time, and that he was the only person with a key. After Appellant fled, Marshall also noticed that the lock on the front door had been damaged. The jury was free to infer from these facts that Appellant had broken into the House.

In any event, proof that Appellant broke into the House was not necessary to convict him for criminal trespass. "The crime of criminal trespass is committed when a person enters a building or occupied structure

knowing that he is not licensed to do so." ***Commonwealth v. Thomas***, 561 A.2d 699, 709 (Pa. 1989). Although 18 Pa.C.S. § 3503(a)(1)(ii) contains the phrase, "breaks into[,]" Section 3503(a)(1)(i) does not. A conviction for criminal trespass may be secured under either Section 3503(a)(1)(i) or 3503(a)(1)(ii). 18 Pa.C.S. § 3503(a)(1). Thus, the Commonwealth did not need to show that Appellant 'broke into' the House to prove the elements of criminal trespass. Accordingly, we conclude that Appellant's third claim also lacks merit.

Judgment of sentence ***affirmed***.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/3/2015</u>