J. S71002/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NATHAN EDWARD BROWN, | : | No. 885 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 16, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0000658-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 19, 2016**

Nathan Edward Brown appeals from the judgment of sentence of

December 16, 2013, following his conviction of drug charges.  We affirm the

convictions, but vacate and remand for re-sentencing.

> On December 12, 2012, the Pennsylvania
> Bureau of Probation and Parole declared [appellant]
> delinquent in his parole and placed him on absconder
> status.  On January 8, 2013, a state parole agent
> and local police went to [appellant]'s registered
> residence because of his parole status and an active
> warrant for his arrest.[1]  Once at the home,
> [appellant]'s sister allowed law enforcement inside.
> The sister said [appellant] was in his bedroom and
> the agent and the police went to the room.  Upon
> entering the room, [appellant] was placed in
> handcuffs for officer safety.  [Appellant] said a gun

---

[1] The arrest warrant was based on an allegation that in the early morning
hours of December 23, 2012, appellant robbed Ashley Munda ("Munda") and
Sandra Leski ("Leski") at gunpoint.

> was in a book bag under the bed.[2]  The police
> found the bag and inside it a .38 caliber revolver
> along with 27 stamp bags of heroin.

Trial court opinion, 2/23/15 at 1.

On October 7, 2013, following a jury trial, appellant was found guilty of one count each of possession of a controlled substance (heroin) and possession with intent to deliver ("PWID").  Appellant was found not guilty of two counts of robbery and one count of burglary.  An additional charge of possession of firearms prohibited was severed prior to trial.[3]  On December 16, 2013, appellant was sentenced to 2½ to 5 years for PWID; possession merged for sentencing purposes.  Appellant filed a timely post-sentence motion which was denied by operation of law on April 29, 2014.  A timely notice of appeal was filed on May 29, 2014.  Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed a Rule 1925(a) opinion.[4]

Appellant has raised the following issues for this court's review:

---

[2] Appellant's statement was made in response to questioning by his parole agent.

[3] Appellant was found guilty of the firearms charge and was sentenced on September 3, 2014, to serve 4 to 8 years' incarceration, concurrent with his sentence on this case.  Appellant filed an appeal on February 13, 2015, at docket number 277 WDA 2015.  That case has not yet been assigned to a panel for disposition, as this court is still awaiting the original record.

[4] Appellant received several extensions of time within which to file his concise statement.  (Docket #32, 34.)

> I.    Whether appellant's sentence of two and one-half (2½) to five (5) years for one (1) count of [PWID] was excessive[?]
>
> II.   Whether the evidence in this matter was legally insufficient to sustain appellant's convictions of [PWID] and possession of a controlled substance[?]
>
> III.  Whether the trial court erred in denying appellant's motion to suppress the evidence[?]
>
> IV.   Whether the trial court erred in denying appellant's post-sentence motions without a hearing[?]

Appellant's brief at 8 (capitalization omitted).

We will address these issues *seriatim*. In his first issue on appeal, appellant argues that the trial court failed to state adequate reasons on the record for imposition of an aggravated range sentence.

> A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, [that] the sentence violates

> either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits. **Commonwealth v. Ahmad**, 961 A.2d 884, 886-87 (Pa.Super.2008) (citations, quotation marks and footnote omitted).

> **Commonwealth v. Brooks**, 2013 WL 66474, at *3 (Pa.Super. Jan. 7, 2013) (italics in original).

**Commonwealth v. Hill**, 66 A.3d 359, 363-364 (Pa.Super. 2013). In addition, in **Commonwealth v. Mouzon**, 812 A.2d 617, 627-628 (Pa. 2002) (plurality), our Supreme Court stated that a claim a sentence which is within the statutory limits is excessive can raise a substantial question.

We determine that appellant has substantially complied with Rule 2119(f). The Commonwealth claims that appellant did not include the requisite Rule 2119(f) statement in his brief, and therefore, his discretionary aspects of sentencing claim is waived. (Commonwealth's brief at 7.) **See Commonwealth v. Davis**, 734 A.2d 879, 882 n.4 (Pa.Super. 1999) (where the Commonwealth has specifically objected to its omission, the defect is fatal and this court is precluded from addressing the merits of appellant's challenge). While it is true that appellant's Rule 2119(f) statement is not

designated by a separate heading, he does include such a statement immediately before the argument portion of his brief. (Appellant's brief at 16-18.) Therein, appellant claims that his sentence fell within the aggravated range of the guidelines and the trial court failed to state reasons on the record justifying an upward deviation from the guidelines. (*Id.*) Such an allegation raises a substantial question for this court's review. *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*) ("Where the appellant asserts that the trial court failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines, we will conclude that the appellant has stated a substantial question for our review." (citation omitted)).

> The matter of sentencing is vested within the sound discretion of the trial court; we only reverse the court's determination upon an abuse of discretion. To demonstrate that the trial court has abused its discretion, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Moreover, 42 Pa.C.S.A. § 9721(b) provides that the trial court must disclose, on the record, its reasons for imposing the sentence.

*Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa.Super. 2004) (citations and internal quotation marks omitted).

> The sentencing court is permitted to deviate from the sentencing guidelines; however, the court must place on the record its reasons for the deviation. In sentencing outside of the guidelines, the court must demonstrate that it understands the

> sentencing guidelines ranges. Where the trial judge deviates from the sentencing guidelines . . . he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa.Super. 2009) (quotation marks and citations omitted). *See also* 204 Pa.Code § 303.13(c) ("When the court imposes an aggravated or mitigated sentence, it shall state the reasons on the record and on the Guideline Sentence Form . . ."); *Commonwealth v. Johnson*, 541 A.2d 332, 340-341 (Pa.Super. 1988), *appeal denied*, 552 A.2d 250 (Pa. 1988) ("when the court sentences outside the Guidelines, there must be a contemporaneous written statement of the reasons for the deviation from the Guidelines"), citing *Commonwealth v. Royer*, 476 A.2d 453, 458 (Pa.Super. 1984). "The failure to provide such a statement of reasons for the sentence imposed is reversible error requiring resentencing." *Johnson*, 541 A.2d at 340 (citations omitted).

With a prior record score of 4 and offense gravity score of 7, the guidelines for PWID were 18 to 24 months, plus or minus 6. Therefore, appellant's sentence of 2½ to 5 years was at the top end of the aggravated

range.[5]  At sentencing, there was no discussion whatsoever of the guideline ranges in this case.   The trial court merely recited appellant's criminal history, as follows:

> Okay.  I'm going to -- I want to put on the record, since there was a presentence report here, it just shows a criminal history as:   At age 17, the Defendant, on May 20th, 2002, he was adjudicated delinquent.  This was a receiving stolen property and a possession of a firearm by a minor.   On February 27th, 2004, the Defendant was -- pled guilty in Washington County and was sentenced to eleven and a half to twenty-three months for a criminal conspiracy to commit robbery, a first-degree felony.  And then on July 20th, 2004, guilty plea in front of Judge Zottola of Allegheny County, in which the charges were first-degree felony robbery, criminal conspiracy, robbery, and receiving stolen property, and the sentence was five to ten years, credit back to February 16th, '04, and to run concurrent with any other sentence.  And in this one, it talks about the Defendant had a gun, produced a gun and pointed it at the victim.   Then his most recent case comes up.  So I just wanted to put that on the record.  That -- if you have no comments, that's fine.

Notes of testimony, 12/16/13 at 4-5.   The trial court then imposed an aggravated range sentence of 2½ to 5 years' incarceration without elaboration or discussion of the applicable guideline ranges, nor do any reasons appear on the guideline sentence form.  (Docket #19.)

---

[5] The Commonwealth requested a 5-10 year mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712.1 (drug offenses committed with firearms). The trial court declined to impose the mandatory minimum sentence.  (Notes of testimony, 12/16/13 at 8.)  We note that Section 9712.1 has been held to be unconstitutional in its entirety. ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa.Super. 2014), ***appeal denied***, 124 A.3d 309 (Pa. 2015).

Regarding appellant's prior criminal record, that is already accounted for in the sentencing guidelines. "We have observed, 'factors that are already used in Guidelines computations, including, ***inter alia***, prior convictions, may not be used to justify an aggravated sentence.'" ***Commonwealth v. Whitmore***, 860 A.2d 1032, 1037-1038 (Pa.Super. 2004), ***reversed in part on other grounds***, 912 A.2d 827 (Pa. 2006), quoting ***Commonwealth v. Johnson***, 758 A.2d 1214, 1219 (Pa.Super. 2000). "Pursuant to ***Johnson***, a prior conviction which is already factored into a defendant's prior record score can not [sic] be used to impose an aggravated minimum sentence under the sentencing guidelines." ***Id.*** at 1038. The record indicates that appellant had a prior record score of four and his prior convictions were already included in his prior record score. The trial court cannot double-count appellant's prior convictions in imposing an aggravated sentence. ***Id.***[6] Therefore, it is necessary to vacate the judgment of sentence and remand for re-sentencing.

In his second issue on appeal, appellant challenges the sufficiency of the evidence to support his convictions of possession of a controlled substance and PWID. Appellant argues that the Commonwealth failed to

---

[6] Even if appellant's prior juvenile adjudications were not included in his prior record score, there is no indication the trial court was relying upon those in imposing an aggravated sentence. The trial court merely recited appellant's criminal history as set forth in the PSI report. More importantly, the trial court did not address the applicable guideline ranges.

prove constructive possession, where appellant was not in actual physical control of the heroin found under his bed.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." ***Id.***; ***see also*** [***Aguado***, 760 A.2d at 1185] ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). "[W]here no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." ***Commonwealth v. Thomas***, 522 Pa. 256, 561 A.2d 699, 704 (1989).

***Commonwealth v. Kinard***, 95 A.3d 279, 291-292 (Pa.Super. 2014) (***en banc***).

> As appellant was not in physical possession of the contraband, the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super.2012), *appeal denied*, 619 Pa. 697, 63 A.3d 1243 (2013) (internal quotation marks and citation omitted).

*Id.* at 292.

Instantly, the heroin was found inside a purple backpack underneath appellant's bed. (Notes of testimony, 10/4/13 at 64-65.) Appellant admitted to police that the heroin was his and that he sold it on an as-needed basis when he was short of money. (*Id.* at 74-75.) Appellant stated that he obtained the heroin from a friend, but declined to identify him. (*Id.* at 75.) Appellant recently lost his job and told police that when he needed a few dollars, he would sell the heroin. (*Id.*) Appellant admitted to selling ten stamp bags of heroin over the last two months. (*Id.* at 87.) Clearly, the evidence was sufficient to support a conclusion that appellant constructively possessed the drugs. Appellant argues that his statement was not recorded and he was not given the opportunity to review it for

accuracy. (Appellant's brief at 24.) However, on sufficiency review, "the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992). There is no merit to appellant's sufficiency argument.

Next, appellant argues that the trial court erred in refusing to suppress physical evidence as well as appellant's inculpatory statements to police. Regarding appellant's initial statement to his parole officer that there was contraband under the bed, appellant argues that he was in police custody at that time and had not been properly *Mirandized*. Appellant also argues that his subsequent statement to police admitting possession of the gun and heroin was fruit of the poisonous tree and should likewise be suppressed. Regarding the evidence found in the book bag underneath his bed, appellant argues that the warrantless search was invalid because he was already handcuffed and in police custody and did not pose a threat. In addition, appellant claims that his parole officer was acting as a "stalking horse" for the police. According to appellant, the technical parole violations were merely a pretext to conduct a warrantless search in furtherance of the robbery investigation.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record

supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa.Super. 2002)

(***en banc***) (citations and quotation marks omitted).

61 Pa.C.S.A. § 6153 provides, in relevant part, the following:

**(b)    Searches and seizures authorized.--**

(1)    Agents may search the person and property of offenders in accordance with the provisions of this section.

(2)    Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or Section 8 of Article I of the Constitution of Pennsylvania.

. . . .

**(d)    Grounds for personal search of offender.--**

(1)    A personal search of an offender may be conducted by an agent;

(i)    if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii)    when an offender is transported or taken into custody; or

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

. . . .

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observation of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

> > (viii) The need to verify compliance with the conditions of supervision.
>
> > . . . .
>
> 61 Pa.C.S.A. § 6153(b), (d). [7]

It is well established that a parolee has limited Fourth Amendment rights and a diminished expectation of privacy in exchange for his early release from prison. ***Commonwealth v. Curry***, 900 A.2d 390, 394 (Pa.Super. 2006) (citations omitted).

As this Court has stated:

> Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison.
>
> The search of a parolee is only reasonable, even where the parolee has signed a waiver . . . , where the totality of the circumstances demonstrate that (1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer.

---

[7] Formerly numbered 61 P.S. § 331.27a.

> *Commonwealth v. Hunter*, 963 A.2d 545, 551-52 (Pa.Super.2008) (quotations and quotation marks omitted). The determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances. *See Commonwealth v. Shabazz*, 18 A.3d 1217 (Pa.Super.2011).

*Commonwealth v. Colon*, 31 A.3d 309, 315 (Pa.Super. 2011), *appeal denied*, 42 A.3d 1058 (Pa. 2012).

> Incident to a lawful arrest, a police officer may conduct a warrantless search of the arrestee's person and of the area within the immediate control of the arrestee. The warrantless search acts to protect the arresting officer from weapons the arrestee may have access to, and prevents the destruction or concealment of evidence.

*Commonwealth v. Walker*, 501 A.2d 1143, 1148 (Pa.Super. 1985), citing

*Commonwealth v. Timko*, 417 A.2d 620, 622 (Pa. 1980);

*Commonwealth v. Long*, 414 A.2d 113, 115 (Pa. 1980); *Commonwealth v. Zock*, 454 A.2d 35, 37 (Pa.Super. 1982), *appeal dismissed*, 465 A.2d 641 (Pa. 1983). Parole officers have police powers including the power to arrest a parolee, without warrant, for technical parole violations. 61 Pa.C.S.A. § 6152.[8] *See Commonwealth v. Miller*, 450 A.2d 40, 42

---

[8] An agent is declared to be a peace officer and is given police power and authority throughout this Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation or parole or for any other violation of the probation or parole.

*Id.*

(Pa.Super. 1982) ("When performing his normal duties, a parole agent is not required to obtain a search warrant. A parole officer has the authority to arrest parolees without a warrant for visible violations of parole.") (citations omitted).

Appellant's parole officer, Andrew Barnes ("Barnes"), testified at the hearing on appellant's suppression motion. Barnes testified that in October/November 2012, appellant gave several positive urine tests for marijuana. (Notes of testimony, 5/30/13 at 17-18.) Appellant had also lost his job. (*Id.* at 16.) Because of the positive urine tests, appellant was referred to Addison Behavioral Care in Wilkinsburg for a drug and alcohol evaluation. (*Id.* at 19.) However, because he was no longer employed and was not covered by health insurance, appellant was instructed to apply for a medical card at the county assistance office to cover the costs. (*Id.*) Up until that point, appellant had been reporting to the parole office on a monthly basis; however, appellant was told to begin reporting every week. (*Id.*) Barnes testified that appellant stopped reporting in December 2012 and was declared delinquent effective December 12, 2012. (*Id.* at 19-20.)

On January 8, 2013, accompanied by Penn Hills police officers, Barnes attempted to locate appellant at his approved residence at 114 Clinton Drive. (*Id.* at 21.) Appellant resided with his mother and stepfather. (*Id.* at 15, 17.) Barnes was made aware by Penn Hills police that appellant had

an active warrant for armed robbery. (*Id.* at 21.) Barnes testified that he had been to 114 Clinton Drive at least six or seven times. (*Id.* at 22.)

Barnes, accompanied by Detective Joseph Blaze and two uniformed officers, knocked on the front door and identified himself. (*Id.* at 21-23.) Appellant's sister answered the door and informed Barnes that appellant was in his bedroom. (*Id.* at 23.) Barnes entered the bedroom with his gun drawn. (*Id.* at 24.) Appellant was getting up out of bed. (*Id.*) Barnes ordered appellant to show his hands. (*Id.*) Appellant complied and he was placed in handcuffs. (*Id.*) At that point, Barnes questioned appellant about the gun; appellant stated that it was in a book bag underneath the bed. (*Id.*) Barnes pulled out the book bag and recovered a .38 caliber revolver, as well as stamp bags containing suspected narcotics. (*Id.* at 24-25.)

Clearly, Barnes had reasonable suspicion of criminal activity to search appellant, his parolee. In addition to technical violations of parole, Barnes was informed that appellant was wanted on suspicion of armed robbery and was in possession of a gun. As stated above, parolees enjoy a diminished expectation of privacy in exchange for their early release on parole. In addition, Barnes could search the area underneath the bed, an area within appellant's immediate vicinity, as part of the search incident to a lawful arrest.

Regarding appellant's allegation that Barnes was acting at the behest of police, the record belies this argument. Barnes testified that he was

instructed to proceed to appellant's approved residence by his supervisor. (**Id.** at 27.)  Barnes testified that Penn Hills police never told him to search the residence.  (**Id.** at 27-28.)  Barnes explained that it is typical to search a parolee's approved residence when he is in violation of the conditions of supervision.   (**Id.** at 28.)   Both Detective Anthony Diulus and Detective Blaze also testified that they did not give Barnes any particular instructions other than to take appellant into custody.  (Notes of testimony, 7/18/13 at 29-30, 52.)[9]  They did not tell Barnes to search the residence. (**Id.**)  Detective Diulus testified that Barnes did not assist in any way with the police investigation into the armed robbery of Munda and Leski.  (**Id.** at 39-40.)   Clearly, Barnes was not acting as a "stalking horse" for the Penn Hills police in their investigation into the alleged robbery.  Barnes was aware of the charges, but was there in his capacity as appellant's parole officer.

Next, we address appellant's argument that his statements were obtained in violation of **Miranda**.[10]

> A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights.   The test for determining the voluntariness of a confession and whether an accused

---

[9] The May 30, 2013 suppression hearing was continued on July 18, 2013.

[10] **Miranda v. Arizona**, 384 U.S. 436 (1966).

> knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.
>
> > *Commonwealth v. Jones*, 546 Pa. 161, 170, 683 A.2d 1181, 1189 (1996) (citations omitted). "The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights." *Commonwealth v. Bronshtein*, 547 Pa. 460, 464, 691 A.2d 907, 913 (1997) (citation omitted).
>
> *Commonwealth v. Parker*, 847 A.2d 745, 748 (Pa.Super. 2004).
>
> > Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of . . . *Miranda* rights. *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way." *Miranda*, *supra* at 444, 86 S.Ct at 1612, 16 L.Ed.2d at 706. "The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul*, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Thus, "Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth v. Ingram*, 814 A.2d 264, 271 (Pa.Super.2002), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003). "In evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances . . . ." *Gaul*, *supra*.

*Commonwealth v. Gonzalez*, 979 A.2d 879, 888-889 (Pa.Super. 2009), quoting *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*). "Parolees, like any other individual, must be given *Miranda*

warnings when subject to custodial interrogation." ***Commonwealth v. Cooley***, 118 A.3d 370, 376 (Pa. 2015).

> The concept of "fruit of the poisonous tree" and the possibility of "purging the taint" of contaminated evidence were extensively discussed in ***Wong Sun v. United States***, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Pennsylvania Supreme Court found the following language from ***Wong Sun*** to be particularly instructive:
>
>> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"
>
> [***Commonwealth v.***] ***Cunningham***, 471 Pa. [577] at 585-86, 370 A.2d [1172] at 1176-77 [(1977)] (quoting ***Wong Sun***, 371 U.S. at 487-88, 83 S.Ct. at 417 (footnote and citations omitted)). If the discovery of evidence can be traced to a source independent of the initial illegality, suppression is not mandated. ***Commonwealth v. Ariondo***, 397 Pa.Super. 364, 377, 580 A.2d 341, 347 (1990), ***appeal denied***, 527 Pa. 628, 592 A.2d 1296 (1991). The "fruit of the poisonous tree" doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts; it does not exclude evidence obtained from an "independent source." ***Id.***

***Commonwealth v. Brown***, 700 A.2d 1310, 1318 (Pa.Super. 1997).

Barnes testified that after he placed appellant in handcuffs, and without reading him his ***Miranda*** warnings, he asked him about the location of the gun:

> I said: You know we're here because of you not reporting and you got a warrant out in Penn Hills for a gun? I said: Where's the gun? And he just stood there. And I said: Okay, but here's the thing; I'm gonna call and get five or six more guys, we're gonna come down and tear her house up. Do you want to disrespect her like that? He just kind of hung his head and said: It's in the bookbag under the bed.

Notes of testimony, 5/30/13 at 24.

Appellant was handcuffed and in custody at the time he was questioned by Barnes regarding the location of the gun. However, appellant was not only in violation of his parole but had a warrant out for his arrest for a violent crime involving a firearm. Barnes had the right to search the residence for contraband including underneath appellant's bed. In fact, Barnes testified that without appellant's admission, he intended to call additional agents from the parole office and conduct a search of the entire house. (***Id.*** at 25.) Barnes would have recovered the gun and drugs from inside the book bag independent of appellant's admission. Therefore, even assuming the interrogation of appellant was improper, the evidence was admissible. ***See Gonzalez***, 979 A.2d at 889-890 (explaining the inevitable discovery rule).

Appellant also argues that his subsequent statement to Detective Diulus should have been suppressed as fruit of the poisonous tree. According to appellant, his statement at the police station flowed directly from the illegal interrogation and search of his bedroom. (Appellant's brief at 39-40.)

Detective Diulus testified that after appellant was transported to the police station, he was given a copy of the arrest warrant and the criminal complaint, including the affidavit of probable cause. (Notes of testimony, 7/18/13 at 30-31.) Later, Detective Diulus asked appellant whether he had read the documents over and wanted to talk; appellant indicated that he did want to talk. (*Id.* at 31.) At that time, appellant was read his ***Miranda*** warnings and also signed a waiver form. (*Id.* at 31-32.) Appellant was not handcuffed and did not appear to be in any distress. (*Id.* at 31-32.) Appellant was taken upstairs to the detective office. (*Id.* at 33.) Detective Diulus again asked appellant whether he wanted to make a statement, and he answered in the affirmative. (*Id.*) Barnes and Detective Blaze were also present, but Detective Diulus was directing the interview. (*Id.* at 35, 54.) Detective Diulus, who was not at 114 Clinton Drive when appellant was arrested, described appellant's demeanor as "very casual." (*Id.* at 28-29, 35.)

Detective Diulus testified that appellant never asked the police to stop the interview and he never requested counsel. (*Id.* at 35.) Detective Blaze

- 22 -

described appellant as cooperative and polite. (*Id.* at 54.) Appellant discussed the items recovered from the residence, but declined to answer questions about the alleged robbery. (*Id.* at 33-34, 36-37.) The only statement appellant made regarding the robbery allegations was that he and his friend left the bar that night and drove directly to his friend's house where they played video games. (*Id.* at 36.)

Even assuming, *arguendo*, that appellant's initial statement to Barnes was coerced and involuntary, his subsequent statement to Detective Diulus was made knowingly and voluntarily. There was a sufficient break in the chain of events to remove the taint of any coercion resulting from the allegedly illegal questioning of appellant and search of appellant's bedroom at 114 Clinton Drive. Appellant was transported to the police station, where he was permitted to examine the criminal complaint and arrest warrant. Appellant indicated he wanted to talk to police. Appellant was then read his *Miranda* rights and executed a waiver form. While Barnes and Detective Blaze were present during the interview, it was conducted by Detective Diulus, who was not even at 114 Clinton Drive when appellant was arrested. Appellant's demeanor was described as calm and relaxed. In fact, appellant declined to discuss the alleged robbery and only agreed to answer questions regarding the contraband found in his bedroom. Appellant's statement to police was admissible, and the trial court did not err in denying appellant's suppression motion. *See Oregon v. Elstad*, 470 U.S. 298, 310

(1985) ("When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession.").

Finally, appellant claims that the trial court erred in failing to hold an evidentiary hearing on post-sentence motions. (Appellant's brief at 25.) Whether or not to hold a hearing on post-sentence motions is within the trial court's discretion. Pa.R.Crim.P. 720(B)(2)(b). With the exception of appellant's sentencing challenge, we find his issues to be without merit; therefore, the trial court did not abuse its discretion in failing to hold an evidentiary hearing. Appellant's sufficiency challenge and his argument that the trial court erred in refusing to suppress evidence, discussed **supra**, can be disposed of on the existing record.

Judgment of sentence vacated. Remanded for re-sentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016