J-S31012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
           v.                 :
:
:
VERNON R. WOMACK          :
:
          Appellant       :   No. 298 EDA 2017

Appeal from the Judgment of Sentence December 9, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004503-2016

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.:        **FILED AUGUST 09, 2018**

Appellant, Vernon R. Womack, appeals from the December 9, 2016 judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial. We affirm.

The trial court summarized the facts of the crimes as follows:

> The Complainant in this case is 21-year-old Tyree Clark ("[the] Complainant"), who was burglarized, robbed, and assaulted inside his home at 3017 Euclid Avenue, Philadelphia, Pennsylvania. The Complainant testified that in 2014 he moved to Philadelphia from Altoona, Pennsylvania, to be with his girlfriend ("Kaytlin") who was pregnant with his son. The Complainant originally lived in the city's Germantown section with his girlfriend and her mother, but he then moved to North Philadelphia and lived at 3017 Euclid Avenue. The Complainant's girlfriend and son alternately lived in Germantown and at 3017 Euclid Avenue, and were staying in Germantown when the crimes described below transpired. (N.T., 9/21/16, pgs. 23-25).

> As well as working full-time in a warehouse, the Complainant endeavored to sell music "instrumentals" and involve himself in the music business. While marketing his instrumentals,

the Complainant became acquainted with Appellant and [Shahid] Abney, whom he knew respectively as "Vern" and "Heed." Appellant and Abney lived in the same neighborhood as the Complainant and fashioned themselves as aspiring rappers. During the month or two preceding the robbery, the Complainant saw Abney almost every day hanging around the neighborhood of 31st and Berks Streets, and on weekends he saw Appellant hanging around Abney in the same area. (N.T., 9/21/16, pgs. 25-28).

On October 13, 2015, Appellant, Abney, and a male named Juan went to the Complainant's home to discuss "making music" with the Complainant's instrumentals. The two-story rowhome had three bedrooms and the men discussed music in the Complainant's room, which contained a laptop, television, speakers and other "music-making" equipment. (N.T., 9/21/16, pgs. 28-30).

The next day, on October 14, 2015, the Complainant worked at his regular warehouse job and then went home. Around 11:50 p.m. that evening, the Complainant received a phone call from a number he did not recognize. The caller identified himself as "Vern" and said he was with "Heed" and "wanted to come over and make music." The Complainant expressed reluctance because it was late and he was working the next day, but he ultimately said "okay" after Vern—*i.e.*, Appellant—assured they would not stay long and would finish with the instrumentals by 12:30 a.m. (N.T., 9/21/16, pg. 30-31).

Appellant called again a few minutes later and said he was standing across the street from the Complainant's home. After looking out his bedroom window but not seeing anyone, the Complainant walked downstairs, opened his front door, and encountered Appellant and Abney standing on his front porch wearing coats. Upon entering the Complainant's home, both Appellant and Abney pulled out "black semi-automatic" guns from their coats and pointed them pointblank at the Complainant's head. (N.T., 9/21/16, pgs. 31-34).

Appellant and Abney ordered the Complainant upstairs to his bedroom, demanded certain of his possessions, and threatened to kill the Complainant if he lied about the whereabouts of any items. Once inside the bedroom, Appellant directed Abney to retrieve a belt from a closet and tie the

Complainant's hands behind his back. Abney then pulled down the Complainant's pants and removed his wallet and cellphone from his pockets. Appellant meanwhile struck the Complainant's nose with the butt of his gun, causing a nosebleed. The Complainant begged Appellant not to kill him because he has a son, but Appellant replied that he "doesn't give a fuck about the Complainant's son." (N.T., 9/21/16, pgs. 34-36).

Appellant and Abney placed "a black sweater over the Complainant's face so he couldn't see anything or breathe." Because the Complainant still bled from his nose, he was "swallowing his own blood" that continued running down his face beneath the sweater. Appellant and Abney then split apart the two box springs composing the Complainant's kingsized bed and ordered the Complainant to lay down between them. The men threw the bed mattress and a dresser on top of the Complainant, further restricting not only his movement but his ability to breathe. (N.T., 9/21/16, pgs. 36-38).

For the next half hour, Appellant and Abney rummaged through both floors of the Complainant's home, threatening to kill him all the while. At one point Appellant and Abney pressed their guns to the Complainant's stomach and demanded the password for his Iphone. Appellant and Abney also used their own cellphones to photograph the Complainant's identification and social security card, and threatened to harm the Complainant's girlfriend and son if he informed the police. (N.T., 9/21/16, pgs. 38-39).

When they finished ransacking the home, Appellant and Abney took all the money from the Complainant's wallet except $20,[3] removed the Complainant from between the box springs, told him to count 60 seconds while they left the premises, and ordered him to then leave Philadelphia immediately. Pointing their guns at the Complainant, Appellant and Abney threatened to kill him if they ever saw him again. (N.T., 9/21/16, pgs. 39-41).

[3] Appellant and Abney stole several items in addition to cash, including the Complainant's Iphone, television and laptop. While testifying, the Complainant was shown photographs of his home in the aftermath of the robbery, and he identified where the stolen items had been located. (N.T., 9/21/16, pgs. 39, 42-45).

After the intruders departed, the Complainant hastily attempted to gather some of his remaining possessions, but "everything was ruined..., ripped up and just out of place." Carrying only a toothbrush and toothpaste, the Complainant left his home and went to a nearby Chinese store for help, but the woman working inside the store "laughed" and "wouldn't help" him. The Complainant therefore walked to a shopping center around five (5) blocks from his home, and a passerby allowed the Complainant to use his phone. The Complainant first called his girlfriend, who did not answer, and he then called a taxi for a ride to where his girlfriend was staying in Germantown. (N.T., 9/21/16, pgs. 45-49).

The Complainant arrived at the Germantown home around 2:00 a.m. and told his girlfriend about the incident. The Complainant's girlfriend called an ambulance and accompanied the Complainant to Roxborough Hospital, where a doctor called 911. A police officer arrived around 3:00 a.m. and transported the Complainant and his girlfriend to Central Detectives, where he gave a statement to Detective Neil Goldstein. At the time, the Complainant was unaware of the home invaders' last names, so he identified them by viewing Instagram photographs from the accounts of mutual friends. (N.T., 9/21/16, pgs. 49-58).

Trial Court Opinion, 5/15/17, at 2–6 (some footnotes omitted).

The trial court also summarized the procedural history:

On September 20, 2016, a jury convicted Appellant of aggravated assault (18 Pa.C.S. § 2702(a)(4)), robbery (18 Pa.C.S. § 3701(a)(1)(ii)), conspiracy to commit robbery (18 Pa.C.S. § 903), burglary (18 Pa.C.S. § 3502(a)(1)(i)), carrying a firearm without a license (18 Pa.C.S. § 6106), carrying a firearm on the public streets of Philadelphia (18 Pa.C.S. § 6108), theft by unlawful taking (18 Pa.C.S. § 3921(a)), possessing an instrument of a crime (18 Pa.C.S. § 907(a)), and terroristic threats (18 Pa.C.S. § 2706(a)(1)). On December 9, 2016, this [c]ourt sentenced Appellant to seven (7) to fifteen (15) years [of] incarceration for his robbery conviction, seven (7) to fifteen (15) years [of] concurrent incarceration for his burglary conviction, seven (7) to fifteen (15) years [of] concurrent incarceration for his conspiracy conviction, and five (5) to ten (10) years [of] concurrent incarceration for his aggravated assault conviction.

This [c]ourt imposed no sentences for [Appellant's] remaining convictions[,] and his aggregate term of imprisonment is seven (7) to fifteen (15) years.[1]

> [1] Appellant was tried jointly with Shahid Abney, whom the jury found guilty of [multiple counts]. . . .

On December 18, 2016, Appellant filed a post-sentence motion, which this [c]ourt denied on December 20, 2016. On January 16, 2017, Appellant filed a notice of appeal with the Superior Court, and on March 31, 2017, Appellant filed a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion, 5/15/17, at 1–2.

Appellant raises the following issues on appeal:

A. Did the Commonwealth fail to prove that Appellant lacked license or privilege to enter [Complainant's] home?

B. Did the lower court fail to adequately state on the record its basis for exceeding the sentencing guidelines maximum recommended sentences?

Appellant's Brief at 5.

Appellant's first issue is a claim of insufficient evidence to support his conviction of burglary. Appellant's Brief at 12. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa.

Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)).  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015).  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018).  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

The whole of Appellant's argument is that he was "invited" into Complainant's home on the night of the burglary, and therefore, the Commonwealth failed to prove that Appellant lacked license or privilege to enter the home.  Appellant's Brief at 12, 13.[1]  His two-sentence argument, completely lacking any references to the record or trial testimony, is deficient. *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("The

---

[1]  Appellant's single sentence in his brief claiming that the Commonwealth failed to establish that, at the time Appellant entered Complainant's house, he had "formulated the intent to commit a crime," is waived.  Appellant's Brief at 13.  Appellant did not raise this allegation in his Pa.R.A.P. 1925(b) statement; the failure to include an issue in a Rule 1925(b) statement results in waiver. Pa.R.A.P. 1925(b)(3)(iv); *see also Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (referring to the bright-line rule first set forth in *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), the Court held, "Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.").

Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. **See** Pa.R.A.P. 2119. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." **Samuel**, 102 A.3d at 1005. Despite the lack of development of the issue, we address it and rely upon the trial court's thorough response to the claim, as follows:

> "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein unless the premises are at the time open to the public or the actor is licensed or privileged to enter." Commonwealth v. Edwards, 588 Pa. 151, 167 (Pa. 2006) (citing 18 Pa.C.S. § 3502(a)). However, "the license or privilege to enter exception recognized by the burglary statute can be negated by deception." Id.; Commonwealth v. Sanchez, 623 Pa. 253, 302-303 (Pa. 2013) ("Any license or privilege to enter a premises is negated when it is acquired by deception."); Commonwealth v. Cooper, 596 Pa. 119, 138 (Pa. 2007) ("A license or privilege to enter a premises is negated in the event it is acquired by deception.").
>
> Here, the deception of Appellant and Abney clearly negated any license they were given to enter the Complainant's home. The Complainant testified that near midnight on October 14, 2015, Appellant called him and said he and Abney "wanted to come over and make music." The Complainant expressed reluctance because it was late and he was working the next day, but he relented after Appellant assured [him] they would not stay long and would finish with the instrumentals by 12:30 a.m. A few minutes later, the Complainant opened his front door and encountered Appellant and Abney standing on his porch. Upon entering the Complainant's home, both Appellant and Abney immediately pulled out "black semi-automatic" guns from their coats, pointed them at the Complainant's head, and launched their crime spree. (N.T., 9/21/16, pgs. 31-34). The Complainant's testimony established that Appellant and Abney deceived the Complainant into believing they had sought entry to his home to "make music" with the Complainant's "instrumentals," when their true purpose was to rob the Complainant.

Trial Court Opinion, 5/15/17, at 11.

Thus, "to prevail on a burglary charge, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises, with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter." *Commonwealth v. Cooper*, 941 A.2d 655, 666 (Pa. 2007) (citing *Commonwealth v. Thomas*, 561 A.2d 699, 704 (Pa. 1989)). "However, a license or privilege to enter a premises is negated in the event it is acquired by deception." *Cooper*, 941 A.2d at 666 (citing *Commonwealth v. Edwards*, 903 A.2d 1139, 1148 (Pa. 2006)). Appellant has completely ignored the fact that he entered the premises by deception. Accordingly, we affirm the trial court's determination that the evidence was sufficient to sustain the conviction.

In his second issue, Appellant avers that the trial court imposed "sentences above the recommended guideline range without putting an adequate basis on the record." Appellant's Brief at 14. This issue presents a challenge to the discretionary aspects of Appellant's sentence. Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right, and his challenge in this regard is properly viewed as a petition for allowance of appeal. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987); *Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must satisfy a four-part test. We evaluate: (1) whether Appellant

filed a timely notice of appeal; (2) whether Appellant preserved the issue at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code. **Commonwealth v. Carrillo-Diaz**, 64 A.3d 722, 725 (Pa. Super. 2013). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010); **Sierra**, 752 A.2d at 912–913.

In the instant case, Appellant filed a timely appeal, the issue was properly preserved in his post-sentence motion, and his brief contains a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant has raised a substantial question that the sentence is not appropriate under 42 Pa.C.S. § 9781(b). **Moury**, 992 A.2d at 170.

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will allow the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code, or (2) contrary to the fundamental norms which underlie the sentencing process. **Sierra**, 752 A.2d at 912–913. "[W]e cannot look beyond the

statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Commonwealth v. Knox***, 165 A.3d 925, 929 (Pa. Super. 2017) (quoting ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005)).

This Court has held that claims of a sentencing court imposing a sentence outside of the standard guidelines without stating adequate reasons on the record presents a substantial question. ***Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014); ***see also Commonwealth v. Gooding***, 818 A.2d 546, 553 (Pa. Super. 2003) (substantial question raised where the appellant asserts the sentencing court failed to state reasons on the record to justify an upward departure from the Sentencing Guidelines). Thus, we conclude that Appellant's claim presents a substantial question for our review, and we will review the merits of Appellant's challenge.

Our standard of review follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In order to establish that the sentencing court abused its discretion, the defendant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. The rationale behind such broad discretion and the concomitantly deferential standard of

appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. To determine whether the trial court made the proper considerations during sentencing, an appellate court must, of necessity, review all of the judge's comments.

*Commonwealth v. Luketic*, 162 A.3d 1149, 1163 (Pa. Super. 2017).

Our careful review of the record reveals that the trial court did not abuse its discretion in sentencing Appellant. The trial court acknowledged on the record that it had a presentence investigation report ("PSI"). N.T. (Sentencing), 12/9/16, at 6. The prosecutor placed on the record the applicable provisions of the Sentencing Guidelines, Appellant's prior record score of zero, and the Commonwealth's sentencing recommendations. *Id*. at 7–8. Additionally, the court heard from Ashley Jenkins, Appellant's girlfriend, and Yolanda Williams, Appellant's sister. *Id*. at 12–14. The court also received letters in support of Appellant from Appellant's mother and Appellant's minister, Reverend Daniels. *Id*. at 17.

We note that sentencing courts are not bound by the Sentencing Guidelines because they are merely advisory. *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted). The sentencing court "may depart from the [G]uidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Id.* (internal quotation marks and citation omitted).

- 11 -

Before imposing sentence, the trial court explained its reasoning, as follows:

> In reviewing the presentence report, I note that [Appellant] was raised by his mother who was a nurse and was the sole financial support for five children. She provided a stable home environment. [Appellant] had a close relationship with her, granted his father was apparently abusive and was not a good role model, but certainly his mother was. And unfortunately despite that, [Appellant] dropped out of school in the ninth grade, perhaps having some mental health issues, but that I think started a downward spiral for [Appellant].

> There was sporadic employment. Liberty Resources Home Health Care, Superfresh, but more likely what has—had happened was [Appellant] became involved in a lifestyle that leads to bad choices.

> There does seem to be a mental health history here in accordance with the mental health evaluation. The diagnosis was depressive disorder, opiate use disorder, and there was a recommendation for mental health treatment as well as substance abuse. [Appellant] admitted that he was taking Percocet up to four times a week. Never participated in substance abuse [treatment]. He did get outpatient counseling at Fairmount and at Belmont and diagnosed with depersonalization disorder, which probably—which does make sense given the nature of the crime involved. And he does have a zero prior record score.

> Sitting through the trial as I did and listening to [Complainant's] testimony outlining what was a horrific, horrific episode of violence and terror really without explanation. This was a fellow who wanted to befriend you. Who thought that you were a rapper that he wanted to become involved with to record music with you, and what you did was turn around and victimize him in such a shameful way. You set him up with Abney. You both set him up, [Complainant]. He invites you into his home where he lives with his young boy, his son. You pull—both pull guns on him, threaten to kill him. Abney ties him up so now he's on the ground and you pistol-whip him. My goodness. Putting him in absolute terror and fear for his life facing two guns pointed at his head. He begged you not to kill him because he had a son and your response was I don't give a fuck.

- 12 -

And while you hid out from police who were scouring the city looking for you. You had the audacity to Facebook [the Complainant] to try and convince him that you were still his friend and you could still make music together if he only wouldn't show up in court. The brazen nature of your behavior, [Appellant], is honestly breathtaking to me.

You don't show any remorse, whatsoever. There's not an apology, there's not any acceptance of responsibility. It is your right to maintain your innocence, I certainly understand that, however, the jury here found you guilty on each and every charge filed. [The Complainant's] victim impact statement is heartbreaking. Certainly he will regret for his entire life what may have just been a fool-hearty effort to kind of, maybe in his mind, play with the big boys and be something that he wasn't. He learned a terrible lesson and certainly has had to relocate and won't even come into Philadelphia for this hearing. My job here, [Appellant], is to balance what these people have said about you, your sister and your girlfriend, and have written to me, and the fact that you have no prior record balanced with the fact that you have people who are willing to step up and support you and vouch for your character in a very impressive way. However, what they don't see is what [the Complainant] saw.

N.T. (Sentencing), 12/9/16, at 23–26.

Upon review, we discern no lack of reasons for the sentence imposed or abuse of the trial court's discretion. Indeed, equipped with a PSI, a victim impact statement, a mental health evaluation, letters from Appellant's family and friends, and in-court testimony from Appellant's girlfriend and sister, the trial court considered all necessary and relevant factors relating to Appellant's personal circumstances and characteristics. *See Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013) ("Where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or

she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

The trial court imposed individual sentences outside the guideline ranges because defendant abused the Complainant's trust, terrorized him during the incident, attempted to prevent the Complainant from testifying before the investigating grand jury, and did not show remorse or accept responsibility for his actions. The trial court was not required to delineate each specific factor that called for a sentence outside of the guideline range because the record reveals that the court carefully considered the facts of the crime and Appellant's character. **See Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010) ("A sentencing court need not undertake a lengthy discourse for its reasons for imposing sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and the character of the offender."). Moreover, the trial court reaffirmed that while the sentences it imposed were outside of the Guidelines, "they were imposed concurrently," and the court noted that it could have imposed consecutive guideline sentences for robbery and burglary, which alone "would be greater than the concurrent term of imprisonment that was imposed." Trial Court Opinion, 5/15/17, at 17. We find no indication that the trial court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill

will, or arrived at a manifestly unreasonable decision. ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/18