J-A23044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY LEE JACOBS JR. | : | |
| | : | |
| Appellant | : | No. 916 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 7, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001942-2018

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED DECEMBER 02, 2020**

Timothy Lee Jacobs, Jr. (Jacobs) appeals from the February 7, 2020 judgment of sentence imposed by the Court of Common Pleas of Chester County (trial court) following his convictions for third-degree murder and related offenses. On appeal, Jacobs challenges two evidentiary rulings and the discretionary aspects of his sentence. We affirm.

**I.**

We glean the following facts from the trial court's opinion:

The facts at trial established that, on April 10, 2018, [Jacobs] and his half-brother, Tyrell Jacobs, pursued and killed Eric Brown by a fatal gunshot wound to the chest after a dispute during a basketball game. The Commonwealth presented evidence, *inter alia*, in the form of video footage taken inside the Star Social Club, where the killing occurred. On the video, as [Jacobs] walked up to the entrance of the bar, one could see the outline or "printing"

_____

[*] Retired Senior Judge assigned to the Superior Court.

of a firearm tucked into the waistband of his pants. Once inside, [Jacobs] and Tyrell Jacobs repeatedly attempted to start a fight with the victim. The video footage shows that he attempted to entice Mr. Brown to leave the bar to go outside. Mr. Brown refused, instead trying to diffuse the situation. The footage also reveals that [Jacobs] brandished his weapon in the crowded bar, aimed the weapon at the victim, and chased the victim around the bar. The attackers eventually cornered Mr. Brown in a rear storage room as he attempted to escape through the back door. It was locked. There was no way out. The video shows Tyrell Jacobs at the door to the storage room, blocking it, and firing one shot at Eric Brown's chest, taking his life. The videotape of the entire event, from the chase, pursuit, corner, and murder was shown to the jury. [Jacobs] and Tyrell Jacobs fled the scene to avoid apprehension.

Trial Court Opinion (TCO), 6/8/20, at unnumbered 2-3.

Jacobs was arrested in West Philadelphia a week later on April 17, 2018. When taken into custody, Jacobs had on him a loaded Sig Sauer 9mm handgun. Ballistics testing revealed that the weapon fired neither the cartridge casing found at the murder scene nor the projectile recovered from the victim. Before trial, Jacobs filed a motion *in limine* to preclude the Sig Sauer 9mm, arguing that its admission would result in unfair prejudice, confuse the issues and mislead the jury. The Commonwealth countered that the Sig Sauer 9mm was relevant to proving that Jacobs possessed a handgun in the Star Social Club, asserting that it was the handgun seen in the security video. The trial court agreed and denied the motion.

At trial, the Commonwealth introduced video surveillance footage showing several angles inside of the Star Social Club. The footage captured the initial altercation and chase in the bar portion of the club, as well as the

- 2 -

shooting near the rear entrance. In addition, the Commonwealth introduced video surveillance footage from surrounding areas depicting the Jacobs brothers' arrival at the bar and flight after the shooting.

During its case in chief, the Commonwealth also presented Nyeirah Jones, who testified that the Jacobs brothers stayed at her home one night while they were fugitives. Despite not expressing any lack of recollection, she was shown her police statement over Jacobs' objection. After reading her statement, she testified her memory was refreshed and that one of the brothers said "main man had it coming" in reference to the murder.

After the reception of the evidence, the jury found Jacobs guilty of third-degree murder, aggravated assault, simple assault, firearms not to be carried without a license, possession of an instrument of crime, possession of a concealed weapon, recklessly endangering another person (four counts) and conspiracy to commit aggravated assault.[1] On February 7, 2020, Jacobs was sentenced to serve an aggregate term of 31 to 62 years' imprisonment.[2] Jacobs filed a timely motion to modify his sentence, which the trial court

---

[1] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), 2701(a), 6106(a)(1), 907(a), 907(b), 2705 and 903(a). Tyrell Jacobs, who was tried jointly, was found guilty of first-degree murder and sentenced to life imprisonment.

[2] The trial court imposed 20 to 40 years' imprisonment for third-degree murder with consecutive terms of 3 to 6 years for the firearms offense, 1 to 2 years each for two of the reckless endangerment counts and 6 to 12 years for conspiracy to commit aggravated assault. All other counts were either run concurrently or merged.

denied. Jacobs timely appealed, and he and the trial court have complied with Pa.R.A.P. 1925. On appeal, Jacobs challenges: (1) admission of the Sig Sauer 9mm; (2) the Commonwealth refreshing the recollection of Nyeirah Jones; and (3) the discretionary aspects of his sentence. We address each issue in turn.

## II.

In his first claim, Jacobs challenges the denial of his pretrial motion *in limine* to preclude admission of the Sig Sauer 9mm that the police recovered when he was arrested a week after the murder.[3]

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court

---

[3] Our standard of review of a trial court's evidentiary ruling is well-established:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. Super. 2015) (citations omitted).

- 4 -

"may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The trial court admitted the recovered handgun under the "similar weapon exception," which our Supreme Court has explained as follows:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact "the accused had a weapon or implement suitable to the commission of the crime charged ... is always a proper ingredient of the case for the prosecution." [**Commonwealth v.**] **Robinson**, [721 A.2d 344,] 351 [(Pa. 1998)] (alteration in original) (citation and internal quotation marks omitted). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." **Commonwealth v. Williams**, 537 Pa. 1, 640 A.2d 1251, 1260 (1994) (citing **Commonwealth v. Coccioletti**, 493 Pa. 103, 425 A.2d 387, 390 (1981)). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." [**Commonwealth v.**] **Lee**, [662 A.2d 645,] 652 [(Pa. 1995)] (citing **Commonwealth v. Thomas**, 522 Pa. 256, 561 A.2d 699, 707 (1989) ("If a proper foundation is laid, the weapon is admissible where the circumstances raise an inference of the likelihood that it was used.")).

**Commonwealth v. Christine**, 125 A.3d 394, 400 (Pa. 2015).

In **Christine**, the Commonwealth tried to introduce evidence that the defendant possessed a shank even though it was not used in the crime. In holding that the "similar weapon exception" does not apply to cases where the weapon at issue was not used in the crime, our **Christine** Court explained:

> The cases cited deal with weapons that might have been used. Possession of a handgun may be relevant even if the particular gun possessed cannot be proven to be the one used in the crime.

- 5 -

> That it was possessed may allow the inference it could have been used. Here, however, the exception is not in play, as the shank was admittedly not used in the pertinent assault. The theory of the exception is that the weapon possessed could have been the weapon used—that simply is not the case here, and admission under the similar-weapon exception was error. To the extent that cases affirm use of this exception strictly on the basis of similarity, without an inference they were the weapons used, we reject them.

*Id*. at 400-01 (footnote omitted).

There was no dispute at trial that Jacobs had a firearm inside the Star Social Club, as the security video shows him brandishing a handgun while he and his brother chase the victim. Besides the security video, however, the Commonwealth presented no other evidence tending to prove that the handgun seen in the security video was the Sig Sauer 9mm Jacobs possessed when he was arrested on April 17, 2018. Jacobs focuses on this lack of evidence in arguing that the Commonwealth failed to lay a foundation that would allow the jury to infer that the Sig Sauer 9mm was "similar in color, shape, or type" to the handgun that he possessed in the Star Social Club. *See* Jacobs's Brief at 21. Moreover, Jacobs observes there was no evidence linking the two firearms, as none of the Commonwealth's witnesses described the "caliber, make, model, color, shape, or length of the firearm in the video footage of April 10, 2018." *Id*. at 27.

Jacobs is correct: there was no evidence connecting the two firearms beyond them both being handguns and being possessed by Jacobs, albeit one week apart. The issue then is whether more was needed to allow the inference

- 6 -

that they were the same handgun, as that would be the only permissible grounds for admission.[4]  We find there was not.

In limiting the application of the "similar weapon exception," *Christine* expressly recognized that possession of a handgun, even if not proven to have been used in the crime, "may allow the inference it could have been used." *Christine*, 125 A.3d at 400.  In this case, Jacobs was charged with possessing firearms without a license, possession of an instrument of crime and possession of a concealed weapon on April 10, 2018, the date of the Star Social Club incident.  Jacobs' possession of the Sig Sauer 9mm on April 17, 2018, allowed the inference that it could have also been the handgun that he possessed during that incident.  That being the case, there was enough for the "similar weapon exception" to apply, as the "[t]he theory of the exception is that the weapon possessed **could have been** the weapon used[.]" *Id*. at 401 (emphasis added).

Jacobs emphasizes that *Christine* states that "[t]o the extent that cases affirm use of [the similar weapon] exception strictly on the basis of similarity, without an inference they were the weapons used, we reject them."  Jacobs'

---

[4] We reject the Commonwealth's suggestion that the firearm was admissible as other crimes evidence under Pa.R.E. 404(b)(2).  **See** Commonwealth's Brief at 21.  The trial court suggests the same in its Pa.R.A.P. 1925(a) opinion.  **See** TCO at 8.  The Commonwealth argues that the firearm was admissible as other crimes evidence under Pa.R.E. 404(b)(2), but it never gave notice of its intent to have the firearm admitted as other crimes evidence as required by Pa.R.E. 404(b)(3).

Brief at 32 (quoting *Christine*, 125 A.3d at 401). Read in isolation, this statement supports his contention that possession alone is insufficient for application of the exception. However, when read in context of the Court's discussion, the statement merely disavows those decisions applying the exception to similar weapons that were not used in the crime. *See*, *e.g.*, *Commonwealth v. Williams*, 58 A.3d 796, 801 (Pa. Super. 2012) (admitting photograph of defendant with firearm was admissible to show that he possessed a weapon similar to the one used to commit his crimes, even though ballistics testing precluded it from being the murder weapon). Indeed, *Christine* recognizes the exception may still apply when there is an inference the weapon was used, which, as discussed above, arises when a firearm is possessed and cannot be excluded as being used in the crime. Accordingly, based on *Christine*, the trial court did not abuse its discretion in denying the motion *in limine* and allowing the Sig Sauer 9mm to be admitted.

Even if the handgun should have been excluded, any such error was harmless. Where there is overwhelming evidence of the defendant's guilt, admission of evidence of the defendant's possession of a weapon not directly connected to the relevant crimes is harmless. *See Commonwealth v. Hernandez*, 230 480, 489-90 (Pa. Super. 2020) (citations omitted). After reviewing the surveillance videos admitted at trial, we find there was overwhelming evidence of Jacobs' guilt that he possessed a weapon and was an accomplice to the murder.

The videos show Jacobs in the passenger side of a white sedan that passes the Star Social Club and parks around the corner, backing up into the spot so it can get out faster. Jacobs and the driver remain in the car for several minutes. In the meantime, Tyrell Jacobs is seen waiting in a SUV for the victim. After the victim walks past and into the bar, Tyrell Jacobs gets out and walks down an alley behind the bar. Around the same time, Jacobs gets out of the white sedan and begins to walk toward the Star Social Club while talking on his cell phone. Jacobs, however, soon turns around and walks to the alley to join his brother, who is also on his cell phone. The brothers then walk to the Star Social Club while the driver of the white sedan waits.

Inside the bar, the brothers confront the victim and try to start a fight, with Tyrell Jacobs punching him and Jacobs motioning for him to step outside. Despite this, the victim does not fight back. The brothers leave the bar but soon return. This time, when Tyrell Jacobs punches the victim, he hits back and tries to run away. The brothers chase him around the bar, with Jacobs pulling out his handgun and pointing it at the victim as he tries to get away. With the front entrance cut off, the victim runs to the backroom. Tyrell Jacobs pursues the victim and shoots him once in the chest. As the murder is being committed, Jacobs is seen putting the handgun back into his pants before rushing out of the front entrance and running to the waiting white sedan. Once Jacobs gets in, the sedan takes off.

The surveillance videos constitute overwhelming evidence that Jacobs was an accomplice to the murder, showing his every move before, during and after the murder. At trial, Jacobs attempted to portray this as a bar fight gone wrong. However, the videos show that the brothers were waiting for the victim to arrive and then directly confronted him inside the bar. Moreover, the videos show Jacobs pointing his gun at the victim as he runs around the bar. Then, after his brother shoots the victim, Jacobs runs back to the waiting sedan and immediately flees.

Compared to this, the admission of the Sig Sauer 9mm played a minor role in the trial. Neither defense counsel nor the Commonwealth mentioned the handgun during their closing arguments. Moreover, that Jacobs possessed a firearm inside the Star Social Club can be clearly seen in the Star Social Club security video, not to mention that his defense counsel conceded in her opening statement that Jacobs had a handgun and pointed it at the victim inside the Star Social Club. *See* N.T., 10/14/19, at 123. As a result, any error concerning the admission of the Sig Sauer 9mm was harmless.

**III.**

Next, Jacobs argues that the trial court erred in allowing the Commonwealth to refresh the recollection of Nyeirah Jones through her police statement without first establishing that she could not recollect what the brothers said when they were in her home.

Pennsylvania Rule of Evidence 612 provides that a witness's memory may be refreshed with a writing or other item. Pa.R.E. 612(a). As Jacobs notes in his brief, in **Commonwealth v. Proctor**, 385 A.2d 383, 385 (Pa. Super. 1978), this Court held that a proper foundation must first be established before a party may avail himself or herself of the rule permitting a witness to refresh his or her recollection. Specifically, we held,

> [t]o permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness'[s] present memory is inadequate; (2) that the writing could refresh the witness'[s] present memory; and (3) that reference to the writing actually does refresh the witness'[s] present memory.

**Id**. (citation omitted).

Nyeirah Jones testified pursuant to a material witness warrant. Afraid she would be hesitant to testify, the Commonwealth preemptively showed her a police statement that she gave to the police not long after the brothers stayed overnight at her home.

> Q: Now, did you have the opportunity at all in any of this to speak with the Jacobs' brothers about what you were aware of, what had happened at the Star Social?
>
> A: Yes.
>
> Q: What did they say about that?
>
> A: I'm asking too much.
>
> Q: You're asking too much. I'd like to show you something, Miss Jones, if that's okay?
>
> A: That's fine.

Q: Do you remember speaking with the Upper Darby Police Department and writing out a written statement with them?

A: Yes.

N.T., 10/15/19, at 197-98.

Jacobs objected and argued that the witness did not testify that she was unable to recall what was said in her home. *Id*. at 198. The trial court decided that the Commonwealth could show her the statement.

THE COURT: You can show the statement to her. I will allow her to read it. Then you ask the follow-up question, does that refresh your recollection about what anything else you may have said, that's fine. It may refresh it, it may not, and we'll cross the bridge when we get there.

*Id*. at 199. After being shown her statement, Nyeirah Jones stated that it refreshed her memory and that one of the brothers said, "Main man had it coming." *Id*.

We need not undertake a lengthy analysis of this claim, as it is clear the Commonwealth did not establish that the witness's memory was exhausted. The Commonwealth concedes as much in its brief, but argues that its failure to show that Nyeirah Jones' memory was inadequate is excused because she testified under a material witness warrant; she gave an initial "vague and general answer" and then testified her memory was refreshed after being shown her statement. *See* Commonwealth's Brief at 31. We are unpersuaded by these arguments, none of which are supported with case law for the motion that the first requirement for refreshing recollection can be excused. The witness never stated that her memory was inadequate or that she could not

recall what the brothers said. Likewise, her initial answer that the brothers said she was "asking too much" was not vague or general. Until she expressed that she could not remember what was said or was unwilling to do so, it was error for her to be shown her police statement, even if she said afterwards that it refreshed her memory.

This does not end our inquiry, as we must determine whether this error was harmless. A judgment can be sustained despite the erroneous admission of evidence if the error could not have contributed to the verdict. **Commonwealth v. Poplawski**, 130 A.3d 697, 716 (Pa. 2015). Harmless error exists where:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. The Commonwealth has the burden of proving harmless error beyond a reasonable doubt.

**Commonwealth v. Radecki**, 180 A.3d 441, 461 (Pa. Super. 2018) (citations and quotation marks omitted).

Jacobs asserts this was not harmless error because the evidence "was directly on point with regard to malice, the pivotal issue in any murder case."

- 13 -

Jacobs' Brief at 47.[5] He contends that the statement that the victim "had it coming" was enough for the jury to find malice. *Id*. at 48. While neither *de minimis* nor cumulative, we concluded that the witness's testimony was insignificant by comparison to the properly admitted and uncontradicted evidence of guilt, namely, the surveillance videos.

Besides the statement not being directly attributed to Jacobs, all of his actions in relation to murder were captured on video. In particular, Jacobs arrives in a car that backs up into its parking spot, suggesting he anticipated that the car would need to get away quick. *See* N.T., 10/16/19, at 64. Jacobs then waits in the sedan for several minutes until his brother walks down the alley, at which point he gets out of the car and is on his cell phone. Because of the way Jacobs immediately turns around to meet his brother, who was also on his cell phone, it is evident that the two were talking to each other before going to confront the victim. *Id*. at 78-79, 104. The videos demonstrate that Jacobs was in communication with his brother before the murder and knew that they would need to get away quick, especially since the driver of the white sedan remained parked waiting for Jacobs.

---

[5] To sustain a conviction of third-degree murder, the Commonwealth must prove that the defendant killed another person with malice. ***Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa. Super. 2019). Malice is defined as "exhibiting an extreme indifference to human life." ***Id.*** A fact-finder may find malice not only in an intentional killing, "but also in an unintentional homicide where the perpetrator consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury." ***Id.***

Jacobs' malice argument becomes even weaker in light of the surveillance video from inside the bar. Tellingly, rather than order a drink, the brothers went directly to the victim and confronted him. When the victim tried to run away after being punched, Jacobs pulled out his handgun and chased him, cutting off the victim's attempt to exit. That Jacobs pulls out his handgun and stops the victim's escape contradicts his argument that he did not exhibit any malice. Then, after corralling the victim into the backroom, Jacobs waits near the door while his brother chases him down and shoots him when he is unable to escape. Jacobs then runs out of the bar and goes directly to the waiting white sedan. Signicantly, the video shows that the driver starts the sedan even before Jacobs reaches the car and then drives away within seconds of Jacobs getting in. This video evidence, when taken together, shows that Jacobs was an accomplice to his brother in killing the victim. According, Jacobs' second issue merits no relief.

**IV.**

Finally, Jacobs alleges that the trial court abused its discretion in imposing the statutory maximum for third-degree murder and consecutive sentences for firearms not to be carried without a license, conspiracy to commit aggravated assault and two counts of recklessly endangering another person. Specifically, Jacobs contends that the trial court failed to state its reasons for its sentence as required by 42 Pa.C.S. § 9721(b), which provides, in relevant part, that "the court shall make as a part of the record, and disclose

in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id*.

Jacobs' claim implicates the discretionary aspects of the trial court's sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the **reasons** relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

Jacobs has filed a timely notice of appeal and included a separate Rule 2119(f) statement in his brief. Moreover, he properly preserved his claim by timely filing a post-sentence motion to modify or reduce his sentence. Lastly, his contention that the trial court failed to state adequate reasons on the record for his sentence qualifies as a substantial question for our review. *See Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016) (citation

omitted). Jacobs' claims, therefore, raise a substantial question, and we will consider the substantive merits of his sentencing issues.[6]

Before hearing from Jacobs and the Commonwealth, the trial court stated the following:

> [B]efore we begin the various presentations, and this is not to cut off a presentation but, rather, to give you some indication of that I have done in preparation, as to [Jacobs] I've had the opportunity to review the Chester County Adult Probation and Parole Presentence Investigation Report, which was completed as of January 30, 2020. That report contained with it a number of attachments, all of which I have read, specifically focusing on various reports and material that was prepared for earlier hearings. And, for the record, let me say I have reviewed the report from the Network for Behavioral Change dated November of 2005; the first of several reports from Bruce Mapes, Ph.D., dated April of 2006; reports from the Community Mental Health Services and Human Services dated May of 2006; an evaluation from the Chester County Youth Service dated October of 2006; second report from Bruce Mapes dated September of 2006; a report from Summit Quest Academy dated March 12th of 2007; a third report from Bruce Mapes dated October of 2008; a second Psychiatric Evaluation from Chester County Youth Services dated March 19 of 2009; a fourth report from Dr. Mapes dated May of 2009; and a final report dated June of 2009.

_____

[6] Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted).

I have also received a Commonwealth's Memorandum In Aid Of Sentencing and a Defendant's Memorandum In Aid Of Sentencing. I thank both attorneys for taking the time to put their thoughts down in writing to give me an opportunity to think about it going forward.

N.T., 2/7/20, at 5-6.

Then, after hearing from both Jacobs and the Commonwealth, the trial court stated the following before imposing sentence.

I have taken a lot of time to read and consider all of the material that was presented on your behalf. I certainly listened to the family of Eric Brown, and have thought long and hard about the events of April 10th, 2018. I have to say that I am saddened by the reading of the Presentence Investigation because somewhere in there, somewhere inside there is a very intelligent, motivated young man. The Presentence Investigation Report contained a list of grades that you had, A's and B's in relatively difficult subjects. The fact that you graduated, given the homelife that you had, is admirable. I am deeply saddened for you that circumstances didn't channel that brain and drive into a positive world, positive direction.

Having reviewed all of the material, considered all of the necessary guidelines and the Sentencing Commission, it's now my obligation to impose sentence, and I do so, as follows …

*Id*. at 32-33.

After reviewing the sentencing transcript, we find no abuse of discretion in the trial court's sentence. Where, as here, the trial court has the benefit of a presentence investigation, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). Relevant to Jacobs' contention, "[t]he sentencing judge

- 18 -

can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." ***Id.*** (citation omitted).  The trial court laid out, on the record, all of the materials that it had reviewed in consideration of its sentence.  This is adequate for satisfying Section 9721(b), as a sentencing court is not required to undertake a lengthy discourse of its reasons for imposing its sentence.  ***See Commonwealth v. Rush***, 162 A.3d 530, 544 (Pa. Super. 2017) (citation omitted).  As a result, based on our review of the record, we find that the trial court did not abuse its discretion at sentencing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/20